

# EXHIBIT A



Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
**DOVEL & LUNER, LLP**
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiffs*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
9/19/2024 6:21:07 PM
Clerk of the Superior Court
By I. Ledesma        ,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF SAN DIEGO

DAVID MARKS and TAGUI GALSTIAN, each individually and on behalf of all others similarly situated,

*Plaintiffs,*

vs.

UNITED PARKS & RESORTS, INC.,

*Defendant.*

Case No.   24CU012855N

**CLASS ACTION COMPLAINT**

Jury Trial Demanded

*General Jurisdiction - Civil*

1

Class Action Complaint

EX A
015

1

## **Table of Contents**

2     I.    Introduction...................................................................................................... 3

3     II.   Parties............................................................................................................. 4

4     III.  Jurisdiction and venue.................................................................................... 4

5     IV.   Defendant's Fake Sales................................................................................... 4

6           A.    Defendant's fake prices and fake discounts............................................. 4

            B.    Defendant's advertisements are unfair, deceptive, and unlawful. ....................... 12
7
            C.    Defendant's advertisements harm consumers.......................................... 13
8
            D.    Plaintiffs were misled by Defendant's misrepresentations. ................................. 14
9
            E.    Defendant breached its contract with and warranties to Mr. Marks, Ms.
10                Galstian, and the putative class. ................................................ 18

      V.    Defendant's Hidden Fees. ............................................................................. 19
11
            A.    Drip pricing is unfair and illegal. ................................................ 19
12
            B.    SeaWorld's checkout process. ..................................................... 21
13
            C.    Sesame Place's checkout process. ................................................ 24
14
            D.    Plaintiffs were harmed by Defendant's hidden fees. ............................................. 28

15          E.    No adequate remedy at law........................................................ 29

16    VI.   Class action allegations................................................................................ 29

17    VII.  Claims. ........................................................................................................ 31

18          First Cause of Action:  Violation of California's False Advertising Law Bus. &
                  Prof. Code §§ 17500 & 17501 et. seq. .................................... 31
19
            Second Cause of Action:  Violation of California's Consumer Legal Remedies
20                Act.......................................................................... 32

21          Third Cause of Action:  Violation of California's Unfair Competition Law for
                  Fake Sales ................................................................. 35
22
            Fourth Cause of Action:  Violation of California's Unfair Competition Law for
23                use of Hidden Fees ......................................................... 37

24          Fifth Cause of Action: Breach of Contract ........................................... 38

            Sixth Cause of Action: Breach of Express Warranty.................................... 39
25
            Seventh Cause of Action: Quasi-Contract ............................................. 40
26
            Eighth Cause of Action: Negligent Misrepresentation .................................. 40

27          Ninth Cause of Action: Intentional Misrepresentation ................................. 41

28    VIII. Prayer for Relief........................................................................................... 42

EX A
016

**I.     Introduction.**

1.     Defendant United Parks & Resorts, Inc. is a theme park company.  It sells tickets to theme parks, including California theme parks SeaWorld and Sesame Place. To sell these tickets, Defendant uses unfair and illegal tactics to trick and manipulate consumers into purchasing tickets and paying more than they otherwise would.  These include using (1) fake sales, and (2) hidden fees.

2.     Defendant uses fake sales to sell its Sea World and Sesame Place tickets.  Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

3.     While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.  *See, e.g.* Cal. Bus. & Prof. Code § 17500, § 17501 ("[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising); Cal. Civ. Code § 1770(a)(9), (13) (prohibiting "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions"); 16 C.F.R. § 233.1.

4.     But Defendant does just that.  Defendant advertises its tickets using purported regular prices and advertises purported "Limited-Time" discounts from those regular prices.  Defendant uses countdown clocks to represent that its sales are on the verge of ending.  But these discounts are *always* available.  As a result, everything about Defendant's price and purported discount advertising is false.  The regular prices Defendant advertises are not actually Defendant's regular prices, because Defendant's tickets are *always* available for less than that.  The purported discounts Defendant advertises are not the true discounts the customer is receiving, and are often not discounts at all.

5.     Defendant also used hidden fees to sell its tickets. It advertised one price, only to later disclose a higher, different price later in the checkout process.  Such fees are deceptive and unfair because it "interferes with consumers' ability to price-compare and manipulates them into

Class Action Complaint

1  paying fees that are either hidden entirely or not presented until late in the transaction, after the

2  consumer already has spent significant time selecting and finalizing a product or service plan to

3  purchase."[1, 2] This is unfair, and illegal under California law.

4  **II.      Parties.**

5          6.      Plaintiff David Marks is domiciled in Camarillo, California.

6          7.      Plaintiff Tagui Galstian is domiciled in Santa Clarita, California.

7          8.      The proposed class includes citizens of every state.

8          9.      Defendant United Parks & Resorts, Inc. is a Delaware limited liability company

9  with its principal place of business in Orlando, Florida.

10         10.     Defendant operates the SeaWorld and Sesame Place theme parks, and sells tickets

11 for both theme parks.

12 **III.    Jurisdiction and venue.**

13         11.     The Court has personal jurisdiction over Defendant because Defendant does

14 business in this county. Defendant operates and sells tickets for Sea World and Sesame Place,

15 which are both located in this county.

16         12.     Venue is proper under because Defendant does business in this county, and a

17 substantial part of Defendant's conduct giving rise to the claims occurred in this District.

18 **IV.     Defendant's Fake Sales.**

19         **A.      Defendant's fake prices and fake discounts.**

20         13.     Defendant sells tickets to Sesame Place and Sea World (the "Products") directly

21 to consumers, including on its websites, www.seaworld.com and www.sesameplace.com.

22         14.     Through its advertisements and statements, Defendant creates the false impression

23 that tickets to both Sesame Place and Sea World have regular prices that are higher than they

24 truly are.

25

26         _____

27         [1] *Bringing Dark Pattern to Light,* FTC Staff Report (September 2022), available at
   https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14
   .2022%20-%20FINAL.pdf

28         [2] Defendant appears to have changed its practice of hidden fees on or around July 1,
   2024.

Class Action Complaint

15.     For example, at any given time, on its website, Defendant advertises steep discounts on its Products.  These discounts always offer "X%" or "$X" off the regular prices Defendant advertises.  Even though in truth these discounts run in perpetuity, Defendant prominently claims they are "LIMITED-TIME" or "OFFER ENDS."  And it advertises these discounts extensively: on attention-grabbing banners on the homepage of its websites; on large banner images on its ticket listing pages; next to ticket listings in colored font; in red strikethrough markings on ticket prices. Example screenshots are provided on the following pages for both SeaWorld and Sesame Place, respectively:

*Sea World:*



*Captured on April 10, 2024*



*Captured on July 1, 2024*

5

Class Action Complaint



*Captured on August 2, 2024*

*Captured April 15, 2024*

Class Action Complaint

EX A
020

1    *Sesame Place:*

2

3



4

5

6

7

8                                                    *Captured on May 26, 2023*

9

10

11

12



13

14

15

16                                                   *Captured on June 10, 2023*

17

18



19

20

21                                                   *Captured on August 2, 2023*

22

23

24



25

26                                                   *Captured on September 24, 2023*

27

28

Class Action Complaint

EX A
021



*Captured on November 1, 2023*



*Captured on January 27, 2024*



*Captured on May 15, 2024*



*Captured on June 8, 2024*

8

Class Action Complaint



*Captured May 15, 2024*

16.    Defendant represents that these discounts would only be available for a limited time, but in reality, they continue indefinitely.

17.    For example, on July 5, 2024, SeaWorld advertised a purportedly time-limited "best sale of the year," "offer end[ing] July 7."



*Captured July 5, 2024*

18.    However, on July 8, 2024, the day that the time-limited sale was supposed to have ended, Defendant advertised an even larger sale with a new expiration date, July 14, 2024.

Class Action Complaint



*Captured July 8, 2024*

19.    Similarly, on April 18, 2024, Sesame Place advertised a purportedly time-limited "offer end[ing] Apr. 21."



*Captured April 14, 2024*

20.    However, on April 23, 2024, after the time-limited sale was supposed to have ended, Defendant advertised an even larger sale with a new expiration date, April 28, 2024.



*Captured April 23, 2024*

21.    To confirm that Defendant always offers discounts off of purported regular prices, Plaintiffs' counsel performed an investigation of Defendant's advertising practices using

1  the Internet Archive's Wayback Machine (available at www.archive.org).[3]  Defendant's sales

2  have persisted continuously since at least February 11, 2021.

3      22.    Using these tactics, Defendant leads reasonable consumers to believe that they

4  will get a discount on the tickets they are purchasing if they purchase during the "limited-time"

5  promotion "end[ing] soon."  In other words, it leads reasonable consumers to believe that if they

6  buy now, they will get a ticket worth X at a discounted, lower price Y.  This creates a sense of

7  urgency: buy now, and you will receive something worth more than you pay for it; wait, and you

8  will pay more for the same thing later.

9      23.    Based on Defendant's advertisements, reasonable consumers reasonably believe

10  that the regular prices Defendant advertises are Defendant's former prices (that is, the price at

11  which the tickets were actually offered for sale before the limited-time offer went into effect).

12  In other words, reasonable consumers reasonably believe that the regular prices Defendant

13  advertises represent the amount that consumers formerly had to pay for Defendant's tickets,

14  before the limited-time sale began.  Said differently, reasonable consumers reasonably believe

15  that, prior to the supposedly time-limited sale, consumers had to pay the regular price to get the

16  tickets and did not have the opportunity to get a discount from that regular price.

17      24.    Reasonable consumers also reasonably believe that the regular prices Defendant

18  advertises represent the true market value of the tickets, and are the prevailing prices for those

19  tickets; and that they are receiving reductions from those regular prices in the amounts

20  advertised.  In truth, however, Defendant *always* offers discounts off the purportedly regular

21  prices it advertises.  As a result, everything about Defendant's price and purported discount

22  advertising is false.  The regular prices Defendant advertises are not actually Defendant's

23  regular or former prices, or the prevailing prices for the tickets Defendant sells, and do not

24  represent the true market value for the tickets, because Defendant's tickets are *always* available

25  for less than that, and customers did not have to formerly pay that amount to get those tickets.

26  The purported discounts Defendant advertises are not the true discount the customer is

27

28      [3] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

11

1  receiving, and are often not a discount at all.  Nor are the purported discounts "LIMITED-

2  TIME" or "END[ING] SOON"—quite the opposite, they are always available.

3        **B.**     **Defendant's advertisements are unfair, deceptive, and unlawful.**

4       25.    Section 17500 of California's False Advertising Law prohibits businesses from

5  making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof.

6  Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it

7  actually is not.

8       26.    Moreover, section 17501 of California's False Advertising Law specifically

9  provides that "[n]o price shall be advertised as a former price … unless the alleged former price

10  was the prevailing market price … within three months next immediately preceding" the

11  advertising.  Cal. Bus. & Prof. Code § 17501.

12       27.    In addition, California's Consumer Legal Remedies Act prohibits "advertising

13  goods or services with the intent not to sell them as advertised" and specifically prohibits "false

14  or misleading statements of fact concerning reasons for, existence of, or amounts of price

15  reductions."  Cal. Civ. Code § 1770(a)(9), (13).

16       28.    In addition, the Federal Trade Commission's regulations prohibit false or

17  misleading "former price comparisons," for example, making up "an artificial, inflated price …

18  for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. §

19  233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value

20  comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices

21  lower than those being charged by others for the same merchandise" when this is not the case.

22  16 C.F.R. § 233.1.

23       29.    And finally, California's unfair competition law bans unlawful, unfair, and

24  deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

25       30.    Here, as described in detail above, Defendant makes untrue and misleading

26  statements about its ticket prices.  Defendant advertises regular prices that are not its true regular

27  prices, or its former prices, and were not the prevailing market price in the three months

28  immediately preceding the advertisement.  In addition, Defendant advertised goods or services

---

12

Class Action Complaint

1    with the intent not to sell them as advertised, for example, by advertising tickets having certain

2    former prices and/or market values without the intent to sell tickets having those former prices

3    and/or market values.  Defendant made false or misleading statements of fact concerning the

4    reasons for, existence of, and amounts of price reductions, including the existence of steep

5    discounts, and the amounts of price reductions resulting from those discounts.  And Defendant

6    engaged in unlawful, unfair, and deceptive business practices.

7        **C.    Defendant's advertisements harm consumers.**

8        31.    Based on Defendant's advertisements, reasonable consumers would expect that

9    the listed regular prices are the regular prices at which Defendant usually sells its tickets; that

10   these are former prices that Defendant sold its tickets at before the time-limited discount was

11   introduced.

12       32.    Reasonable consumers would also expect that, if they purchase during the sale,

13   they will receive a ticket whose regular price and/or market value is the advertised regular price

14   and that they will receive the advertised discount from the regular purchase price.

15       33.    In addition, consumers are more likely to buy the ticket if they believe that the

16   ticket is on sale and that they are getting a ticket with a higher regular price and/or market value

17   at a substantial discount.

18       34.    Consumers that are presented with discounts are substantially more likely to

19   make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a

20   coupon often closes the deal, if they are wavering or are undecided on making a purchase."[4]

21   And, "two-thirds of consumers have made a purchase they weren't originally planning to make

22   solely based on finding a coupon or discount," while "80% [of consumers] said they feel

23   encouraged to make a first-time purchase with a brand that is new to them if they found an offer

24   or discount."[5]

25

26   _____

27   [4] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

28   [5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

35.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[6]

36.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's tickets.  This puts upward pressure on the prices that Defendant can charge for its tickets.  As a result, Defendant can charge a price premium for its tickets, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the tickets they bought than they otherwise would have.

**D.     Plaintiffs were misled by Defendant's misrepresentations.**

*Mr. Marks*

37.     On April 19, 2024, Defendant's SeaWorld website advertised a "Spring Spectacular Sale" that was "end[ing] April 21" with purported savings of "up to 50% on tickets, fun cards & passes" and "up to 20% on passes":



*Captured on April 19, 2024*

---

[6] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

EX A
028

38.    As shown above, the sale was advertised as "end[ing] April 21." In reality, the exact same sale continued on.  For example, on April 26, 2024, Defendant's website advertised the same sale, with a new countdown timer:



*Captured on April 26, 2024*

39.    Pursuant to the advertised sale, on both days, and for weeks before and after, Defendant advertised the same purported discounts on its tickets.  For example, Defendant advertised virtually the same discounts for their SeaWorld tickets:



*Captured on March 8, 2024*



*Captured on April 10, 2024*

15

Class Action Complaint

1
2
3
4
5
6
7



8          *Captured on May 29, 2024*                    *Captured on June 26, 2024*

9
10
11



12          *Captured on July 5, 2024*                    *Captured on July 15, 2024*

13

14          40.     On April 19, 2024, Mr. Marks purchased two SeaWorld San Diego single-day

15   tickets through Defendant's website, www.seaworld.com. He made this purchase while living in

16   Camarillo, California.  When Mr. Marks made his purchase, Defendant's website represented

17   that SeaWorld San Diego Single-Day Tickets had a regular price, but was on sale for a

18   discounted price of $89.99.  Defendant represented that the tickets had a certain regular price,

19   and that Mr. Marks was receiving a substantial discount for the tickets that he purchased.

20          41.     Mr. Marks read and relied on Defendant's representations on the website,

21   specifically that the tickets were being offered at a discount for a limited time, that they had

22   higher regular and usual prices, and that he would be receiving a price reduction by buying now.

23   Based on Defendant's representations described and shown above, Mr. Marks reasonably

24   understood that Defendant regularly (and before the promotion Defendant was advertising) sold

25   the tickets he was purchasing at the published regular price, that this regular price was the

26   market value of the tickets that he was buying, that he was receiving the advertised discount as

27   compared to the regular price, and that advertised discount was only available for a limited time

28   (during the limited time promotion).  He would not have made the purchase if he had known

16

Class Action Complaint

1    that the tickets were not discounted as advertised, and that he was not receiving the advertised

2    discount.

3         42.    In reality, as explained above, SeaWorld's tickets, including the tickets that Mr.

4    Marks purchased, are *always* available at a discounted price off of the purported regular prices.[7]

5    In other words, Defendant did not regularly sell the tickets Mr. Marks purchased at the

6    purported regular prices, and the tickets were not discounted as advertised.  Plus, the sale was

7    not limited-time—Defendant's tickets are always on sale.

8    ***Ms. Galstian***

9         43.    On July 29, 2023, Ms. Galstian purchased five Sesame Place San Diego single-

10    day tickets through Defendant's website, www.sesameplace.com. She made this purchase while

11    living in Santa Clarita, California.  When Ms. Galstian made her purchase, Defendant's website

12    represented that the tickets had a regular price, but were on sale for a discounted price of $67.00.

13    Defendant represented that the tickets had a certain regular price, and that Ms. Galstian was

14    receiving a substantial discount for the tickets that she purchased.

15         44.    Ms. Galstian read and relied on Defendant's representations on the website,

16    specifically that the tickets were being offered at a discount for a limited time, that they had

17    higher regular and usual prices, and that she would be receiving a price reduction by buying

18    now.  Based on Defendant's representations described and shown above, Ms. Galstian

19    reasonably understood that Defendant regularly (and before the promotion Defendant was

20    advertising) sold the tickets she was purchasing at the published regular price, that this regular

21    price was the market value of the tickets that she was buying, that she was receiving the

22    advertised discount as compared to the regular price, and that advertised discount was only

23    available for a limited time (during the limited time promotion).  She would not have made the

24    purchase if she had known that the tickets were not discounted as advertised, and that she was

25    not receiving the advertised discount.

26

27    _____

28        [7] A limited set of Sea World tickets, passes, and packages are sometimes excluded from Defendant's sales. The Single Day Tickets purchased by Mr. Marks, however, are continuously on sale.

1    45.    In reality, as explained above, Sesame Place's tickets, including the tickets that

2    Ms. Galstian purchased, are *always* available at a discounted price off of the purported regular

3    prices.[8]  In other words, Defendant did not regularly sell the tickets Ms. Galstian purchased at

4    the purported regular prices, and the tickets were not discounted as advertised.  Plus, the sale

5    was not limited-time—Defendant's tickets are always on sale.

6    **E.    Defendant breached its contract with and warranties to Mr. Marks, Ms.**

7    **Galstian, and the putative class.**

8    46.    When Mr. Marks and other members of the putative class purchased and paid for

9    the SeaWorld tickets that they bought as described above, they accepted offers that Defendant

10    made, and thus, a contract was formed each time that they made purchases.  Each offer was to

11    provide tickets having a particular listed regular price and market value, and to provide those

12    tickets at the discounted price advertised on the website.

13    47.    When Ms. Galstian and other members of the putative class purchased and paid

14    for the Sesame Place tickets that they bought as described above, they accepted offers that

15    Defendant made, and thus, a contract was formed each time that they made purchases. Each

16    offer was to provide tickets having a particular listed regular price and market value, and to

17    provide those tickets at the discounted price advertised on the website.

18    48.    Defendant's website and email confirmations list the market value of the tickets

19    that Defendant promised to provide (which, for Mr. Marks and Ms. Galstian, are listed above).

20    Defendant agreed to provide a discount equal to the difference between the regular prices, and

21    the prices paid by Mr. Marks, Ms. Galstian, and putative class members. Defendant also

22    warranted that the regular price and market value of the tickets Mr. Marks and Ms. Galstian

23    purchased were the advertised list prices and warranted that Mr. Marks and Ms. Galstian were

24    receiving a specific discount on those tickets.

25

26

27    _____

28    [8] A limited set of Sesame Place's ticket packages are sometimes excluded from Defendant's sales. The Single Day Tickets purchased by Ms. Galstian, however, are continuously on sale.

Class Action Complaint

1    49.    The regular price and market value of the tickets Mr. Marks, Ms. Galstian, and

2    putative class members would receive, and the amount of the discount they would be provided

3    off the regular price of those tickets, were specific and material terms of the contract.  They

4    were also affirmations of fact about the tickets and a promise relating to the tickets.

5    50.    Mr. Marks, Ms. Galstian, and other members of the putative class performed

6    their obligations under the contract by paying for the tickets they purchased.

7    51.    Defendant breached its contract by failing to provide Mr. Marks, Ms. Galstian,

8    and other members of the putative class with tickets that have a regular price and market value

9    equal to the regular price displayed, and by failing to provide the discount it promised.

10   Defendants also breached warranties for the same reasons.

11   **V.    Defendant's Hidden Fees.**

12   52.    In addition to using fake sales, Defendant also uses hidden fees to sell its tickets.

13   **A.    Drip pricing is unfair and illegal.**

14   53.    "As more and more commerce has moved online, so too have manipulative

15   design practices—termed 'dark patterns'" that "trick or manipulate users into making choices

16   they would not otherwise have made and that may cause harm."[9]

17   54.    One example of a dark pattern is drip pricing, in which companies "advertise only

18   part of a product's total price to lure in consumers, and do not mention other mandatory charges

19   until late in the buying process."[10] In the ticketing space, companies advertise one price for a

20   ticket, and then load the purchase up with additional fees at the end of the checkout process. The

21   goal of this is to conceal the true cost of the ticket and prevent comparison shopping. The

22   consumer selects and decides to purchase the ticket based on a lower advertised price, but ends

23   up paying more because of junk fees that are tacked on at the end.

24

25

26

27    [9] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at
https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14

28    .2022%20-%20FINAL.pdf
      [10] *Id.*

Class Action Complaint

55.     The Federal Trade Commission has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[11] "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[12] By then, consumers have already committed to the purchase.

56.     Drip pricing costs consumers a lot of money. For example, when buying tickets, consumers rely on the initial price, spend more money, and make purchases that they otherwise would not have made.[13]

57.     Drip pricing also harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers. An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[14]

58.     Thus, the Federal Trade Commission has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price." "Failure to do so has the potential to deceive consumers in violation of the FTC Act."[15]

59.     Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." And, the FTC has "federal rule-making authority to issue industry-wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair

---

[11] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[12] *Bringing Dark Patterns to Light*, FTC Staff Report, at 9 (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[13] *Id.* at 9.

[14] *Id.*

[15] *Id.*

EX A
034

1    methods of competition."[16] Because drip pricing is unfair and deceptive in violation of the FTC

2    Act, the FTC has proposed specific rules banning junk fees under its rulemaking authority.[17]

3        60.    Drip pricing is also illegal under California law, and has been for years.

4        61.    Starting on July 1, 2024, drip pricing is illegal under the California Legal

5    Remedies Act.  SB 478 makes drip pricing—namely, "[a]dvertising, displaying, or offering a

6    price for a good or service that does not include all mandatory fees or charges" other than taxes

7    and shipping—a violation of California's Consumer Legal Remedies Act.  By making drip

8    pricing a violation of the CLRA, SB 478 made punitive damages, attorneys fees, and statutory

9    damages available to consumers who sue companies for this unfair and illegal practice.

10        62.    But, even before July 1, 2024, drip pricing was already illegal under California's

11    other consumer protection statutes.  As SB 478 expressly states, "This practice, like other forms

12    of bait and switch advertising, is prohibited by existing statutes, including the Unfair

13    Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the

14    Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with

15    Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."[18]   Thus, drip

16    pricing has been illegal under California's other consumer protection statute for years.

17        63.    Up until about July 1, 2024, Defendant used drip pricing in its ticket sales. [19]

18    Plaintiffs, who purchased tickets before July 1, 2024, bring this lawsuit to obtain relief for

19    consumers who, like Plaintiffs, purchased tickets from Defendant with hidden fees.

20    **B.    SeaWorld's checkout process.**

21        64.    Before about July 1, 2024, Defendant used drip pricing, and hid the true price of

22    the ticket until purchase was almost complete. For each of SeaWorld's tickets, Defendant used

23    drip pricing and added a mandatory fee at the end of the checkout process.  The example below

24    is representative of SeaWorld's checkout process until about July 1, 2024, when it changed its

25    _____

26        [16] https://www.ftc.gov/enforcement/rulemaking

        [17] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-
27    rule-on-unfair-or-deceptive-fees

        [18] Consumer Legal Remedies Act: advertisements., CA S.B. 478, 2023.

28        [19] SeaWorld and Sesame Place changed their policies on or around July 1, 2024,
    presumably to avoid additional liability under the CLRA.

1  practices. In all relevant respects, throughout the entire statute of limitations period, the online

2  ticket sales for SeaWorld were substantially similar.

3      65.    When a consumer visited Defendant's website, www.seaworld.com, the

4  homepage advertised ticket packages for its theme park. After choosing to book a ticket,

5  consumers were then presented with a calendar of available dates with specific ticket prices for

6  each date. In the example below, the total for a ticket on June 28, 2024 is represented as $60.

7

8

9

10  

11

12

13

14

15

16

17                                        *Captured June 26, 2024*

18      66.    After selecting a date, the ticket was added to the consumer's cart. In the example

19  below, the ticket price remained $60, with "Total savings of $62.99."

20

21

22

23  

24

25

26

27

28                                        *Captured June 26, 2024*

22

Class Action Complaint

1   67.     But several screens later, the ticket price changed.  Several screens into the

2   checkout process, Defendant's website reflected a new charge of a "Taxes & Fees" for $10.99.

3   The cost of this fee was disclosed for the first time in the checkout process at the end of

4   checkout, in small font. This fee changed the ticket price from the previously advertised $60 to

5   an increased price of $70.99.



*Captured June 26, 2024*

Class Action Complaint

68.     In the final page of checkout, consumers were presented with an order summary with the total cost. In the example below, the breakdown of "Taxes & Fees" revealed a $10.99 "Service Fee," and $0.00 in taxes.  That is, the entire "Taxes and Fees" in the example below was just a mandatory service fee tacked on by Defendant.



*Captured June 26, 2024*

69.     Defendant did not disclose the cost of this mandatory charge until several pages into the checkout process.  This was after the consumer had invested a significant amount of time selecting and finalizing their ticket specifications, and had already decided to purchase the tickets. Only then, were they finally informed of an additional "Service Fee" of $10.99 in the final subtotal. Because Defendant waited until the end of the checkout process to disclose the true price, it was difficult for consumers to accurately compare ticket prices across other theme parks. Not only does this frustrate comparison shopping, but this drip pricing also impeded competition and led consumers to pay more for their ticket than they otherwise would have.

**C.     Sesame Place's checkout process.**

70.     When a consumer visited Defendant's website, www.sesameplace.com, the homepage advertised ticket packages and special events for its theme park. After choosing to book a ticket, consumers were then presented with a calendar of available dates with specific

1   ticket prices for each date. In the example below, the total for a ticket on June 28, 2024 is

2   represented as $64.99.



<em>Captured June 26, 2024</em>

15          71.     After selecting a date, the ticket was added to the consumer's cart. In the example

16   below, the ticket price remained $64.99.

17          72.     In small grey font, in a place that is likely to be missed, Defendant's website

18   stated "Plus taxes & fees" and "Total savings of $30.00."  But it fails to disclose how much the

19   taxes or fees are.

Class Action Complaint

EX A
039



*Captured June 26, 2024*

73.    But several screens later, the ticket price changed.  Several screens into the checkout process, Defendant's website reflected a new charge of a "Taxes & Fees" for $10.99. The cost of this fee was disclosed for the first time in the checkout process at the end of checkout, in small grey font. This fee changed the ticket price from the previously advertised $64.99 to an increased price of $75.98.

Class Action Complaint

EX A
040



*Captured June 26, 2024*

74.    In the final page of checkout, consumers were presented with an order summary with the total cost. In the example below, the breakdown of "Taxes & Fees" revealed a $10.99 "Service Fee," and $0.00 in taxes. That is, the entire fee was just a mandatory service fee tacked on by Defendant.



*Captured June 26, 2024*

EX A
041

1    75.    Defendant did not disclose the cost of this mandatory charge until several pages

2    into the checkout process.  This was after the consumer had invested a significant amount of time

3    selecting and finalizing their ticket specifications, and had already decided to purchase the

4    tickets. Only then, were they finally informed of an additional "Service Fee" of $10.99 in the

5    final subtotal. Because Defendant waited until the end of the checkout process to disclose the

6    true price, it was difficult for consumers to accurately compare ticket prices across other theme

7    parks. Not only does this frustrate comparison shopping, but this drip pricing also impeded

8    competition and led consumers to pay more for their ticket than they otherwise would have.

9    **D.    Plaintiffs were harmed by Defendant's hidden fees.**

10    76.    As explained in greater detail above, on April 19, 2024, Mr. Marks purchased two

11    SeaWorld San Diego single-day tickets, three Dine with Orcas tickets, and one parking ticket

12    through Defendant's website, www.seaworld.com.

13    77.    During the checkout process, Defendant represented that the total of these tickets

14    would cost $312.96.  Mr. Marks believed that the total of these tickets would cost $312.96. But

15    at the end of the checkout, Defendant added a "Service Fee" of $22.49, making the actual ticket

16    price $341.65 (including $6.20 in tax), not $312.97, as Defendant had previously represented.

17    78.    Mr. Marks was harmed by paying Defendant's illegal and unfair junk fee. If

18    Defendant had not used hidden fees, Plaintiff would have paid less for the tickets.

19    79.    As explained in greater detail above, on July 29, 2023, Ms. Galstian purchased

20    five Sesame Place San Diego single-day tickets through Defendant's website,

21    www.sesameplace.com.

22    80.    During the checkout process, Defendant represented that the total of these tickets

23    would cost $339.95.  Ms. Galstian believed that the total of these tickets would cost $339.95. But

24    at the end of the checkout, Defendant added a "Service Fee" of $16.99, making the actual ticket

25    price $356.94, not $339.95, as Defendant had previously represented.

26    81.    Ms. Galstian was harmed by paying Defendant's illegal and unfair junk fee. If

27    Defendant had not used hidden fees, Plaintiff would have paid less for the tickets.

28

Class Action Complaint

EX A
042

**E.     No adequate remedy at law.**

82.     Plaintiffs seek damages and, in the alternative, restitution.  Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

83.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims.  For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims.

**VI.     Class action allegations.**

84.     Plaintiffs bring the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more ticket advertised at a discount on the SeaWorld or Sesame Place.

- SeaWorld Fake Sale Subclass: all persons who, while in the state of California and within the applicable statute of limitations, purchased one or more Sea World tickets at a discount.

- Sesame Fake Sale Place Subclass: all persons who, while in the state of California and within the applicable statute of limitations purchased one or more Sesame Place tickets at a discount.

- Sea World Hidden Fees Subclass: all persons who, while in the state of California and within the applicable statute of limitations and until June 30, 2024, purchased one or more Sea World tickets and paid hidden fees.

- Sesame Place Hidden Fees Subclass: all persons who, while in the state of California and within the applicable statute of limitations and until June 30, 2024, purchased one or more Sesame Place tickets and paid hidden fees.

Class Action Complaint

EX A
043

85.     The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability.***

86.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are thousands or tens of thousands of class members.

87.     Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions.***

88.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

- whether Defendant made false or misleading statements of fact in its advertisements;
- whether Defendant violated California's consumer protection statutes;
- whether Defendant committed a breach of contract;
- whether Defendant committed a breach of an express warranty;
- whether Defendant's drip pricing is unfair;
- whether Defendant's drip pricing is illegal under California's consumer protection statutes and the FTC Act;
- what damages are needed to reasonably compensate Plaintiffs and the proposed class.

***Typicality & Adequacy.***

89.     Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiffs purchased tickets from United Parks & Resorts. There are no conflicts of interest between Plaintiffs and the class.

Class Action Complaint

EX A
044

*Superiority.*

90.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical.  It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VII.    Claims.**

<u>First Cause of Action:</u>

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

**(By Plaintiffs and the Sea World and Sesame Fake Sale Place Subclasses)**

91.    Plaintiffs incorporate each and every factual allegation set forth above.

92.    Plaintiff Marks brings this cause of action individually and on behalf of the Sea World Fake Sale Subclass.

93.    Plaintiff Galstian brings this cause of action individually and on behalf of the Sesame Place Fake Sale Subclass.

94.    Defendant has violated Sections 17500 and 17501 of the Business and Professions Code.

95.    Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and subclass members.

96.    As alleged more fully above, Defendant advertises former prices along with discounts.  Defendant does this, for example, by crossing out a higher price (*e.g.*, $114.99) and displaying it next to a lower, discounted price.  Reasonable consumers would understand prices denoted as regular prices from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

97.    The prices advertised by Defendant are not Defendant's regular prices.  In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the ticket in question), because there is always a heavily-advertised promotion ongoing entitling consumers to a discount.  Moreover, for the same reasons, those prices were not the former

1    prices of the tickets.  Accordingly, Defendant's statements about the former prices of its tickets,

2    and its statements about its discounts from those former prices, were untrue and misleading.  In

3    addition, Defendant's statements that its discounts are "limited time" and only "valid" for a

4    certain time period are false and misleading too.

5        98.    In addition, Defendant has violated, and continues to violate, section 17501 of the

6    Business and Professions Code by advertising former prices that were not the prevailing market

7    price within three months immediately preceding the advertising.  As explained above,

8    Defendant's advertised regular prices, which reasonable consumers would understand to denote

9    former prices, were not the prevailing market prices for the Products within three months

10   preceding publication of the advertisement.  And Defendant's former price advertisements do

11   not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

12   Defendant's advertisements do not indicate whether or when the purported former prices were

13   offered at all.

14       99.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs

15   saw, read, and reasonably relied on the statements when purchasing Defendant's tickets.

16   Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

17       100.    In addition, subclass-wide reliance can be inferred because Defendant's

18   misrepresentations were material, i.e., a reasonable consumer would consider them important in

19   deciding whether to buy the tickets.

20       101.    Defendant's misrepresentations were a substantial factor and proximate cause in

21   causing damages and losses to Plaintiffs and the subclass.

22       102.    Plaintiffs and the subclasses were injured as a direct and proximate result of

23   Defendant's conduct because (a) they would not have purchased Defendant's tickets if they had

24   known the truth, and/or (b) they overpaid for the tickets because the tickets were sold at a price

25   premium due to the misrepresentation.

26                              **Second Cause of Action:**

27            **Violation of California's Consumer Legal Remedies Act**

28    **(By Plaintiffs and the Sea World and Sesame Place Fake Sale Subclasses)**

32

1  103. Plaintiffs incorporate each and every factual allegation set forth above.

2  104. Plaintiff Marks brings this cause of action individually and on behalf of the Sea

3 World Fake Sale Subclass.

4  105. Plaintiff Galstian brings this cause of action individually and on behalf of the

5 Sesame Place Fake Sale Subclass.

6  106. Plaintiffs and the class are "consumers," as the term is defined by California

7 Civil Code § 1761(d).

8  107. Plaintiffs and the subclasses have engaged in "transactions" with Defendant as

9 that term is defined by California Civil Code § 1761(e).

10  108. The conduct alleged in this Complaint constitutes unfair methods of competition

11 and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was

12 undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

13 goods to consumers.

14  109. As alleged more fully above, Defendant made and disseminated untrue and

15 misleading statements of facts in its advertisements to subclass members.  Defendant did this by

16 using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising

17 fake discounts.

18  110. Defendant violated, and continues to violate, section 1770 of the California Civil

19 Code.

20  111. Defendant violated, and continues to violate, section 1770(a)(5) of the California

21 Civil Code by representing that Products offered for sale have characteristics or benefits that

22 they do not have.  Defendant represents that the value of its Products is greater than it actually is

23 by advertising inflated regular prices and fake discounts for Products.

24  112. Defendant violated, and continues to violate, section 1770(a)(9) of the California

25 Civil Code.  Defendant violates this by advertising its Products as being offered at a discount,

26 when in fact Defendant does not intend to sell the Products at a discount.

27  113. And Defendant violated, and continues to violate section 1770(a)(13) by making

28 false or misleading statements of fact concerning reasons for, existence of, or amounts of, price

Class Action Complaint

reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (*e.g.*, "Memorial Day Sale," when in fact the sale is ongoing and not limited to Memorial Day).

114.    Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

115.    Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Defendant's tickets.  Defendant's misrepresentations were a substantial factor in Plaintiffs' purchase decision.

116.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Defendant's tickets.

117.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass.

118.    Plaintiffs and the subclasses were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's tickets if they had known the discounts and/or regular prices were not real, (b) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation, and/or (c) they received products with market values lower than the promised market values.

119.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Mr. Marks and Ms. Galstian, on behalf of themselves and all other members of the subclass, seek injunctive relief.

120.    CLRA § 1782 NOTICE.  On August 27, 2024, a CLRA demand letter was sent to Defendant's registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  Defendant does not have a California headquarters.  If Defendant does not fully correct the problem for Plaintiffs and for each

Class Action Complaint

EX A
048

1    member of the California Subclass within 30 days of receipt, Plaintiffs and the California

2    Subclass will seek all monetary relief allowed under the CLRA.

3        121.    A CLRA venue declaration is attached.

4                            **Third Cause of Action**:

5            **Violation of California's Unfair Competition Law for Fake Sales**

6        **(By Plaintiffs and the Sea World and Sesame Place Fake Sale Subclasses)**

7        122.    Plaintiffs incorporate each and every factual allegation set forth above.

8        123.    Plaintiff Marks brings this cause of action individually and on behalf of the Sea

9    World Fake Sale Subclass.

10        124.    Plaintiff Galstian brings this cause of action individually and on behalf of the

11    Sesame Place Fake Sale Subclass.

12        125.    Defendant has violated California's Unfair Competition Law (UCL) by engaging

13    in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

14    *The Unlawful Prong.*

15        126.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as

16    alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by

17    violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting

18    commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1). As the

19    FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. §

20    233.1, § 233.2.

21    *The Deceptive Prong.*

22        127.    As alleged in detail above, Defendant's representations that its Products were on

23    sale, that the sale was limited in time, that the Products had a specific regular price, and that the

24    customers were receiving discounts were false and misleading.

25        128.    Defendant's representations were misleading to Plaintiffs and other reasonable

26    consumers.

27        129.    Plaintiffs relied on Defendant's misleading representations and omissions, as

28    detailed above.

EX A
049

*The Unfair Prong.*

130.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

131.    Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

132.    The harm to Plaintiffs and the subclasses greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

133.    Plaintiffs and the subclasses could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

134.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

135.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing the Products. Defendant's representations were a substantial factor in Plaintiffs' purchase decision.

136.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

137.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the subclass members.

138.    Plaintiffs and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known

EX A
050

that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

### Fourth Cause of Action:

**Violation of California's Unfair Competition Law for use of Hidden Fees**

**(By Plaintiffs and the Sea World and Sesame Place Hidden Fees Subclasses)**

139.    Plaintiffs incorporate each and every factual allegation set forth above.

140.    Plaintiff Marks brings this cause of action individually and on behalf of the Sea World Hidden Fees Subclass.

141.    Plaintiff Galstian brings this cause of action individually and on behalf of the Sesame Place Hidden Fees Subclass.

142.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong.*

143.    Defendant engaged in unlawful conduct by violating the FTC Act and the unfair prong of the UCL, as alleged above and throughout.

*The Unfair Prong.*

144.    Defendant's conduct is unfair because the harm to the consumer greatly outweighs the public utility of Defendant's conduct.  There is no public utility to using junk fees. Junk fees mislead consumers on price, and prevent comparison shopping and competition.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Hidden and late-disclosed fees only injure healthy competition and harm consumers.  And companies could easily disclose any such fees upfront.

145.    Defendant violated established public policy by violating the FTC Act and the UCL, as alleged below and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the FTC Act and of the California legislature, which, as alleged above, expressly declared that drip pricing is unfair and violates the UCL).

146.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

147.    Plaintiffs and the class could not have reasonably avoided this injury.  As alleged above, Defendant's fees were not disclosed until after consumers select their theme park tickets. By then, the harm was done.

148.    Defendant's use of hidden fees were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and class members.

149.    Plaintiffs and class members were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for the tickets because they are sold at a price premium due to the hidden fees.

**Fifth Cause of Action:**

**Breach of Contract**

**(by Plaintiffs and the Nationwide Class)**

150.    Plaintiffs incorporate each and every factual allegation set forth above.

151.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiff Marks brings it on behalf of himself and the Sea World Fake Sale Subclass, and Plaintiff Galstian brings it on behalf of the Sesame Place Fake Sale Subclass.

152.    Plaintiffs and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website.

153.    The contracts provided that Plaintiffs and class members would pay Defendant for the Products purchased.

154.    The contracts further required that Defendant provides Plaintiffs and class members with Products that have a market value equal to the regular prices displayed on the website.  They also required that Defendant provide Plaintiffs and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

155.    The specific discounts were a specific and material term of each contract.

156.    Plaintiffs and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

Class Action Complaint

EX A
052

157.     Defendant breached its contracts with Plaintiffs and class members by failing to provide Products that had a regular price, former price, and/or prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

158.     Plaintiffs provided Defendant with notice of this breach of contract, by mailing a notice letter to Defendant's headquarters, on August 27, 2024.

159.     As a direct and proximate result of Defendant's breaches, Plaintiffs and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**Sixth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiffs and the Sea World and Sesame Place Fake Sale Subclasses)**

160.     Plaintiffs incorporate each and every factual allegation set forth above.

161.     Plaintiff Marks brings this cause of action individually and on behalf of the Sea World Fake Sale Subclass.

162.     Plaintiff Galstian brings this cause of action individually and on behalf of the Sesame Place Fake Sale Subclass.

163.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Defendant's tickets, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

164.     This warranty was part of the basis of the bargain and Plaintiffs and members of the subclass relied on this warranty.

165.     In fact, the Defendant's tickets' stated market value was not the prevailing market value.  Thus, the warranty was breached.

166.     Plaintiffs provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on August 27, 2024.

1      167.    Plaintiffs and the subclasses were injured as a direct and proximate result of

2  Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they

3  would not have purchased Defendant's tickets if they had known that the warranty was false, or

4  (b) they overpaid for the tickets because the tickets were sold at a price premium due to the

5  warranty.

6  **Seventh Cause of Action:**

7  **Quasi-Contract**

8  **(by Plaintiffs and the Nationwide Class)**

9      168.    Plaintiffs incorporate each and every factual allegation in paragraphs 1-45, 52-90

10  above.

11      169.    Plaintiffs bring this cause of action in the alternative to his Breach of Contract

12  claim (Claim IV) on behalf of themselves and the Nationwide Class.  In the alternative, Plaintiff

13  Marks brings this cause of action individually and on behalf of the Sea World Fake Sale and Sea

14  World Hidden Fees Subclass, and Plaintiff Galstian brings this cause of action individually and

15  on behalf of the Sesame Place Fake Sale and Sesame Place Hidden Fees Subclass.

16      170.    As alleged in detail above, Defendant's false and misleading advertising caused

17  Plaintiffs and the class to purchase Defendant's tickets and to pay a price premium for these

18  tickets.

19      171.    Defendant's unlawful and unfair "convenience fees" caused Plaintiffs and the

20  class to overpay for the theme park tickets.

21      172.    In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

22      173.    (In the alternative only), due to Defendant's misrepresentations, its contracts with

23  Plaintiffs and other class members are voidable.

24      174.    Plaintiffs and the class seek restitution, and in the alternative, rescission.

25  **Eighth Cause of Action:**

26  **Negligent Misrepresentation**

27  **(by Plaintiffs and the Sea World and Sesame Place Fake Sale Subclasses)**

28      175.    Plaintiffs incorporate each and every factual allegation set forth above.

Class Action Complaint

176.    Plaintiff Marks brings this cause of action individually and on behalf of the Sea World Fake Sale Subclass.

177.    Plaintiff Galstian brings this cause of action individually and on behalf of the Sesame Place Fake Sale Subclass.

178.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and subclass members concerning the existence and/or nature of the discounts and savings advertised.

179.    These representations were false.

180.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these misrepresentations were true when made.

181.    Defendant intended that Plaintiffs and subclass members rely on these misrepresentations and Plaintiffs and subclass members read and reasonably relied on them.

182.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Defendant's tickets.

183.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and subclass members.

184.    Plaintiffs and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Defendant's tickets if they had known that the representations were false, and/or (b) they overpaid for the tickets because the tickets were sold at a price premium due to the misrepresentation.

**Ninth Cause of Action:**

**Intentional Misrepresentation**

**(by Plaintiffs and the Sea World and Sesame Place Fake Sale Subclasses)**

185.    Plaintiffs incorporate each and every factual allegation set forth above.

186.    Plaintiff Marks brings this cause of action individually and on behalf of the Sea World Fake Sale Subclass.

EX A 055

1    187.    Plaintiff Galstian brings this cause of action individually and on behalf of the

2    Sesame Place Fake Sale Subclass.

3    188.    As alleged more fully above, Defendant made false representations and material

4    omissions of fact to Plaintiffs and subclass members concerning the existence and/or nature of

5    the discounts and savings advertised.

6    189.    These representations were false.

7    190.    When Defendant made these misrepresentations, it knew that they were false at

8    the time that it made them and/or acted recklessly in making the misrepresentations.

9    191.    Defendant intended that Plaintiffs and subclass members rely on these

10    misrepresentations and Plaintiffs and subclass members read and reasonably relied on them.

11    192.    In addition, subclass-wide reliance can be inferred because Defendant's

12    misrepresentations were material, i.e., a reasonable consumer would consider them important in

13    deciding whether to buy Defendant's tickets.

14    193.    Defendant's misrepresentations were a substantial factor and proximate cause in

15    causing damages and losses to Plaintiffs and subclass members.

16    194.    Plaintiffs and subclass members were injured as a direct and proximate result of

17    Defendant's conduct because (a) they would not have purchased Defendant's tickets if they had

18    known that the representations were false, and/or (b) they overpaid for the tickets because the

19    tickets were sold at a price premium due to the misrepresentation.

20    **VIII.   Prayer for Relief.**

21    195.    Plaintiffs seek the following relief for themselves and the class:

22    •     An order certifying the asserted claims, or issues raised, as a class action;

23    •     A judgment in favor of Plaintiffs and the proposed class;

24    •     Damages, and statutory damages, where applicable;

25    •     Restitution;

26    •     Rescission;

27    •     Disgorgement, and other just equitable relief;

28    •     Pre- and post-judgment interest;

Class Action Complaint

1    • An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

2    • Reasonable attorneys' fees and costs, as allowed by law;

3    • Any additional relief that the Court deems reasonable and just.

4

5

6    Date: September 19, 2024                    Respectfully submitted,

7

8                                      By: _____

9                                      Christin Cho (Cal. Bar No. 238173)
                                       christin@dovel.com
10                                     Grace Bennett (Cal. Bar No. 345948)
                                       grace@dovel.com
11                                     **DOVEL & LUNER, LLP**
                                       201 Santa Monica Blvd., Suite 600
12                                     Santa Monica, California 90401
                                       Telephone: (310) 656-7066
13                                     Facsimile: (310) 656-7069

14
                                       *Attorneys for Plaintiffs*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

43

Class Action Complaint

| | |
|---|---|
| 1 | **<u>Demand for Jury Trial</u>** |
| 2 | Plaintiffs demand the right to a jury trial on all claims so triable. |
| 3 | |
| 4 | Date: September 19, 2024                              Respectfully submitted, |
| 5 | |
| 6 | By: _____ |
| 7 | Christin Cho (Cal. Bar No. 238173) |
| 8 | christin@dovel.com<br>Grace Bennett (Cal. Bar No. 345948) |
| 9 | grace@dovel.com<br>**DOVEL & LUNER, LLP** |
| 10 | 201 Santa Monica Blvd., Suite 600<br>Santa Monica, California 90401 |
| 11 | Telephone: (310) 656-7066<br>Facsimile: (310) 656-7069 |
| 12 | |
| 13 | *Attorneys for Plaintiffs* |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Class Action Complaint

EX A
058

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

United Parks & Resorts, Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

David Marks and Tina Galstian, each individually and on behalf of all others similarly situated

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

9/19/2024 6:21:07 PM

Clerk of the Superior Court
By I. Ledesma        ,Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* North County Superior Court

325 Melrose Drive, Vista, CA 92081

CASE NUMBER:
*(Número del Caso):*

**24CU012855N**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christin Cho, 201 Santa Monica Blvd., Suite 600, Santa Monica, CA 90401, Tel: (310) 656-7055

DATE:    09/25/2024                    Clerk, by _____, Deputy
*(Fecha)*                              *(Secretario)*                    *(Adjunto)*
                                       I. Ledesma

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* United Parks & Resorts, Inc.
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form]    [Save this form]    [Clear this form]



EX A
059