1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   DAVID MARKS, et al.,                    Case No. 24-cv-1992-MMA-KSC

12                        Plaintiffs,        **ORDER GRANTING IN PART AND
13                                           DENYING IN PART DEFENDANT'S
                                             MOTION TO DISMISS**
14   v.
                                             [Doc. No. 15]
15   UNITED PARKS & RESORTS, INC.,

16                        Defendant.

17

18

19        On January 21, 2025, Plaintiffs David Marks and Tagui Galstian (collectively,

20   "Plaintiffs") filed a First Amended Class Action Complaint against Defendant United

21   Parks & Resorts, Inc ("Defendant").  Doc. No. 11 ("FAC").  Defendant has since filed a

22   motion to dismiss the FAC.  Doc. No. 15.  Plaintiffs filed an opposition, to which

23   Defendant replied.  Doc. Nos. 20, 21.  The Court found the matter suitable for

24   determination on the papers and without oral argument pursuant to Civil Local Rule

25   7.1.d.1.  Doc. No. 23.  For the reasons set forth below, the Court **GRANTS IN PART**

26   and **DENIES IN PART** Defendant's motion to dismiss.

27

28

# I. BACKGROUND[1]

Defendant is a theme park company that sells tickets to theme parks in California including SeaWorld and Sesame Place. FAC ¶ 1. Generally speaking, Plaintiffs allege that Defendant utilizes fake sales to entice consumers into purchasing tickets. For example, they contend that Defendant advertises "Limited-Time" discounts from regular ticket prices, using countdown clocks and language such as "HURRY, OFFER ENDS SOON!" to represent that its sales are on the verge of ending. *Id.* ¶¶ 4, 16–23. But, according to Plaintiffs, these discounts are always available. *Id.* Plaintiffs also allege that Defendant uses hidden fees when selling tickets. *Id.* ¶¶ 5, 58. According to Plaintiffs, Defendant utilized "drip pricing"—when a company advertises "only part of a product's total price to lure in customers," and fails to mention "other mandatory charges until late in the buying process"—until about July 1, 2024, hiding the true price of tickets until the purchase was nearly complete. *Id.* ¶¶ 60, 59–69. Thus, Plaintiffs maintain that Defendant's price and discount advertising is false and deceptive.

Plaintiffs are two purchasers of tickets sold by Defendant. On April 19, 2024, Plaintiff Marks purchased two SeaWorld single-day tickets, three Dine with Orcas tickets, and one parking ticket through Defendant's website. *Id.* ¶¶ 41, 82. On the date of Plaintiff Marks' purchase, Defendant represented on its website that SeaWorld single-day tickets had a regular price of $114.99 but were on sale a discounted price of $89.99. *Id.* ¶ 41. Plaintiff alleges that the tickets were always sold at the purported 'discounted' price and therefore were never discounted as advertised. *Id.* ¶ 43. Moreover, during the checkout process, Defendant represented that the total of Plaintiff Marks' tickets would cost $312.96. *Id.* ¶ 83. But at the end of the checkout, Defendant added a "Service Fee" of $22.49, making the actual ticket price $341.65 (including $6.20 in tax), not $312.97, as Defendant had previously represented. *Id.*

---

[1] Because this matter is before the Court on a motion to dismiss, the Court accepts as true the allegations set forth in the FAC. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Similarly, Plaintiff Galstian purchased five Sesame Place single-day tickets through Defendant's website on July 29, 2023. *Id.* ¶¶ 44, 85. On the date of her purchase, Defendant represented that single-day tickets to Sesame Place were on sale for a discounted price of $67.00. *Id.* ¶ 44. However, Plaintiff alleges that these tickets are always available at a discounted price. *Id.* ¶ 45. Further, during the checkout process, Defendant represented that the total of Plaintiff Glastian's tickets would cost $339.95. *Id.* ¶ 86. But at the end of the checkout, Defendant added a "Service Fee" of $16.99, making the actual ticket price $356.94, not $339.95, as Defendant had previously represented. *Id.*

As a result, Plaintiffs assert the following claims against Defendant: (1) violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"); (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1770 ("CLRA"); (3–4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"); (5) breach of contract; (6) breach of express warranty; (7) quasi-contract; (8) negligent misrepresentation; and (9) intentional misrepresentation. *Id.* ¶¶ 92–202.

## II. LEGAL STANDARD

A Rule[2] 12(b)(6) motion tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  A court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

Defendant moves to dismiss all nine of Plaintiffs' claims on various grounds.  The Court addresses these arguments in turn.

**A.    Nationwide Class Standing**

The Court begins with Defendant's argument that Plaintiffs lack standing to represent a nationwide class of consumers.  Doc. No. 15 at 26–29.  In opposition, Plaintiffs argue, essentially, that Defendant has not met its burden of demonstrating that conflict of law principles preclude them from pursuing representation of a nationwide class allegations and that the issue should be reserved for the class certification stage. Doc. No. 20 at 27–29.

First off, Plaintiffs rely on decisions that defer choice-of-law questions to class certification and emphasize the governmental-interest framework discussed in *Mazza v.*

*Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  Doc. No. 20 at 27–29 (citing *So v. HP, Inc.*, No. 22-CV-02327-BLF, 2022 WL 16925965 (N.D. Cal. Nov. 14, 2022); *Grivas v. Metagenics, Inc.*, 2018 WL 6185978 (C.D. Cal. Mar. 19, 2018)).  Those authorities, however, address which choice-of-law analysis will govern putative class members' claims, not whether the named plaintiffs have Article III standing to assert claims under the laws of states with which they have no connection.  *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1123–25 (S.D. Cal. 2021) (collecting cases recognizing "growing trend" to decide standing at pleadings and leaving any *Mazza* choice-of-law analysis for class certification).

Here, Plaintiffs seek to represent the following five classes:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more ticket advertised at a discount on the SeaWorld or Sesame Place.

- SeaWorld Fake Sale Subclass: all persons who, while in the state of California and within the applicable statute of limitations, purchased one or more Sea World tickets at a discount.

- Sesame Fake Sale Place Subclass: all persons who, while in the state of California and within the applicable statute of limitations purchased one or more Sesame Place tickets at a discount.

- Sea World Hidden Fees Subclass: all persons who, while in the state of California and within the applicable statute of limitations and until June 30, 2024, purchased one or more Sea World tickets and paid hidden fees.

- Sesame Place Hidden Fees Subclass: all persons who, while in the state of California and within the applicable statute of limitations and until June 30, 2024, purchased one or more Sesame Place tickets and paid hidden fees.

FAC ¶ 92.  Thus, Plaintiffs seek to represent four classes of California consumers and one class of consumers nationwide.  Plaintiffs press their fifth claim, for breach of

contract, and seventh claim, for quasi-contract, on behalf of themselves and the Nationwide Class.  *Id.* at 42, 44.

The decision to address questions of standing before or during class certification is a discretionary one—"there is no hard and fast rule to apply."  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1124 (N.D. Cal. 2021) (internal quotations marks omitted) (quoting *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017)).  There is, however, a clear trend among the district courts in this Circuit to address class standing issues at the pleadings stage.  *See Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1072 (S.D. Cal. 2020) (collecting cases); *Stewart*, 537 F. Supp. 3d at 1125 (collecting cases); *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) ("Courts in this circuit have overwhelmingly ruled that plaintiffs do not have standing to assert claims from states in which they do not reside and that it is appropriate [...] to address standing in advance of class certification.") (internal citation marks omitted) (collecting cases).  Namely, following the Ninth Circuit's decision in *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004), district courts in California frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products.  *See, e.g., Morales v. Unilever U.S., Inc.*, Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *5 (E.D. Cal. Apr. 9, 2014) (holding that because the named plaintiffs were only residents of two states and did not purchase defendant's products in any state but their own, the named plaintiffs did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint") (quoting *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013)); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. May 11, 2007) (holding that "[a]t least one named plaintiff must have standing with respect to each claim the class representative seek to bring" and dismissing the claims made under the laws of twenty-four states where none of the named plaintiffs resided or were alleged to have personally purchased the product); *see also Carpenter v. PetSmart,*

*Inc.*, 441 F. Supp. 3d 1028, 1039 (S.D. Cal. 2020); *Soo v. Lorex Corp.*, No. 20-cv-01437-JSC, 2020 WL 5408117, at \*10 (N.D. Cal. Sept. 9, 2020) ("While the Ninth Circuit has not definitively answered whether named plaintiffs have standing to pursue class claims under the common laws of states to which the named plaintiffs have no connection, district courts in this Circuit routinely hold that they do not."); *Babaian v. Dunkin' Brands Grp., Inc.*, 2018 WL 11445614, at \*4–5 (C.D. Cal. Feb. 16, 2018) (California plaintiff lacked standing to assert nationwide common-law claims under other states' laws); *Rael v. N.Y. & Co., Inc.*, 2016 WL 7655247, at \*4 (S.D. Cal. Dec. 28, 2016) ("If a named plaintiff is 'lacking for a particular state, all claims based on that state's laws are subject to dismissal.'").

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976)). "[S]tanding is not dispensed in gross." *Id.* at 358 n.6. It "is claim-specific and 'a plaintiff must demonstrate standing for each claim he seeks to press.'" *Harris v. CVS Pharmacy, Inc.*, No. EDCV1302329ABAGRX, 2015 WL 4694047, at \*4 (C.D. Cal. Aug. 6, 2015) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)); *see also Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611, at \*4 (N.D. Cal. Sept. 22, 2014) ("If a complaint includes multiple claims, at least one named class representative must have Article III standing to raise each claim.") (citation and quotation marks omitted).

Here, Plaintiffs have not even identified which state laws govern their two nationwide class claims, *see* FAC ¶¶ 158–67, 176–82, which is alone grounds for dismissal. *See, e.g.*, *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at \*12 (N.D. Cal. Feb. 8, 2016) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.");

*see also Lum v. Merlin Ents. Grp. U.S. Holdings Inc.*, No. 20CV01049 JAH-MSB, 2023 WL 2583307, at *14 (S.D. Cal. Mar. 20, 2023) ("Plaintiffs' fail to specify which states laws govern their claims. Accordingly, they are subject to dismissal for failure to state a claim."). And by pressing their breach of contract and quasi-contract claims on behalf of a nationwide class, the Court can only assume Plaintiffs are attempting to assert fifty (50) breach of contract warranty claims and fifty (50) quasi-contract claims—one of each claim for each state—on behalf of fifty (50) separate state-specific classes, when they only have standing under one: California. *See Carpenter*, 441 F. Supp. 3d at 1039.

It is well within the Court's discretion to dismiss Plaintiffs' nationwide class claims and allegations at the pleadings stage rather than at class certification. There is significant risk of wasted effort and resources by the Court and the parties should Plaintiffs be permitted to proceed to class discovery with a putative nationwide class, when Plaintiffs can only plead California state law claims. There is simply nothing of legal substance to permit such a putative class to proceed. There are no claims that would apply to a nationwide class. And it is neither prudent nor necessary to defer until class certification. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909 (N.D. Cal. 2019) (discussing *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015)); *see also Carpenter*, 441 F. Supp. 3d at 1040–41.

Plaintiffs' arguments to the contrary are unpersuasive. That one district court found it proper to wait until class certification to determine whether a plaintiff can represent a nationwide class of consumers, *Grivas*, 2018 WL 6185978, at *8, does not undermine the overwhelming majority of courts holding otherwise. The Court is also not persuaded that Defendant bears the burden of demonstrating that a conflict of law analysis results in its favor where, as here, they are raising an Article III standing challenge to Plaintiffs' attempt to press claims under the laws of states to which they have no connection—states in which they do not reside and were not located when they viewed Defendant's advertising and purchased Defendant's tickets.

In sum, the question here is whether Plaintiffs have standing to hypothetically assert claims on behalf of unnamed class members under potentially forty-nine (49) other states' laws that do not govern their own claims. They do not. Accordingly, the Court **GRANTS** Defendant's motion on this basis.

**B.    "Fake Sales" Claims Under Rule 9(b)**

Next, Defendant moves to dismiss Plaintiffs' CLRA, UCL, and FAL claims to the extent they are based upon the "fake sales" for failure to satisfy Rule 9(b). Doc. No. 15 at 12–19. The parties appear to agree, and the Court finds, that these three claims sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading requirement. *See id.*; *see also* Doc. No. 20 at 12–21.

Pursuant to Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud . . . ," Fed. R. Civ. P. 9(b), including "the who, what, when, where, and how of the misconduct charged," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). The context surrounding the fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted) (first quoting *Vess*, 317 F.3d at 1106; and then quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*).

Here, Plaintiff Marks alleges that on April 19, 2024, Defendant advertised a "Spring Spectacular Sale," pursuant to which single-day date specific tickets to SeaWorld San Diego were on sale for $89.99 from the regular price of $114.99. FAC ¶¶ 38, 41. According to Defendant's website, this sale was for a limited time and was set to end on April 21. *Id.* ¶¶ 39, 42. Relying on this representation, Plaintiff Marks believed that he

would receive a reduced-price ticket by buying now and so purchased two tickets.  *Id.* ¶¶ 41–42.  Plaintiffs contends that these sales are "fake sales" because the tickets are always available at a discounted price and thus that these purported sales are not time-limited.  *Id.* ¶ 43.

Plaintiff Galstian asserts that on July 29, 2023, Defendant advertised single-day date specific tickets to Sesame Place San Diego for $67.00.  *Id.* ¶ 44.  She contends that these were represented as "on sale" for this discounted price from an unidentified regular price and for a "limited time."  *Id.* ¶¶ 44–45.  In reliance on these representations, Plaintiff Galstian purchase five tickets.  *Id.*  However, Plaintiff Galstian alleges that Defendant's tickets are "*always* available at a discounted price off of the purported regular prices."  *Id.* ¶ 46.

The Court finds that Plaintiff Marks' allegations just narrowly satisfy the who, what, where, when, and how of the asserted fraud.  As to the how, although Plaintiffs contend that Defendant's tickets are "*always* available at a discounted price," *Id.* ¶ 43, they do not clearly allege how the advertisement of the specific discounted price they encountered was false or misleading for both named plaintiffs.  For example, while Plaintiff Marks does contend that the Spring Spectacular Sale lasted beyond April 21, Plaintiff Galstian does not sufficiently allege facts surrounding the timing of the sale she relied upon.  *Id.* at ¶¶ 41–46.  Plaintiff Galstian alleges that she relied on generic "limited time" and "strike-through" representations, but she does not identify the actual regular price shown or specify when the purported promotion began or ended, leaving the timing of the challenged sale unclear.  *See id.* at ¶¶ 44–46.  Nor do Plaintiffs allege that the tickets were not ultimately offered at the advertised price.  To the extent Plaintiff Galstian argues that perpetual discounts combined with "limited time" or "regular price" representations created a false sense of urgency, those allegations still fail to specify the details of the particular sale that she encountered, as Rule 9(b) requires.  That Defendant's tickets are "always on sale," *id.* ¶ 43, does not inherently render these particular sales false or misleading.  As to Plaintiff Marks, however, it appears that to the

extent the advertisements represented that the tickets were regularly priced at $114.99, this representation was false or misleading because Defendants did not "regularly sell" the tickets Plaintiff Marks purchased at this price. *Id.* ¶ 43. To this limited extent, the Court finds that Plaintiff Marks' CLRA, FAL, and UCL claims survive dismissal.[3] Otherwise, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' CLRA, UCL, and FAL claims.

**C.    CLRA Claim**

Defendant also separately moves to dismiss Plaintiffs' CLRA claim, arguing that the sale of amusement park tickets is not encompassed by the CLRA. Doc. No. 15 at 10. Relevant here, the CLRA prohibits unfair or deceptive acts or practices "in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). Here, Plaintiffs plead that Defendant violated subsections (a)(5), (a)(9), and (a)(13) of the CLRA. FAC ¶¶ 119–121. Those subsections specifically prohibit the following:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.
> [. . .]
> (9) Advertising goods or services with intent not to sell them as advertised.
> [. . .]
> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions.

Cal. Civ. Code § 1770(a)(5), (9), (13).

As a threshold matter, Plaintiffs do not plead facts plausibly supporting their claims that Defendant violated subsections (a)(5) or (a)(9). Plaintiffs fail to identify any representation by Defendant concerning the tickets' "sponsorship, approval,

---

[3] Although the Court finds at this stage that Plaintiff Marks pleads his CLRA theory with sufficient particularity under Rule 9(b), the Court addresses the statutory scope of the CLRA separately below. *See infra* Section III.C. There, the Court concludes that the CLRA does not reach the sale of admission tickets, and the claim is dismissed as a matter of law.

characteristics, ingredients, uses, benefits, or quantities" or that Defendant represents it has "a sponsorship, approval, status, affiliation, or connection" that it does not have. There are also no allegations that Defendant did not intend to sell the tickets in question as advertised—i.e., at the discounted price listed in the advertisements.  So even assuming the CLRA reaches Defendant's sale of amusement park tickets, the Court finds that Plaintiffs' CLRA claim is subject to dismissal on this basis.

Plaintiffs plead that they are "consumers" as defined by California Civil Code § 1761(d) and that Defendant is engaged in "transactions" as defined by California Civil Code § 1761(e).  FAC ¶¶ 114–15.  While Plaintiffs summarily plead that Defendant intended for these transactions to result in, and they did result in, "the sale of goods or services to consumers," *id.* ¶ 116, Plaintiffs do not plead that the tickets they purchased are either "goods" or "services" as defined by the CLRA.  The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property."  Cal. Civ. Code § 1761(a).  "Services" is defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).

Plaintiffs do not argue that the tickets are "tangible chattels" as defined by the CLRA.  Rather, in their opposition, they argue that the tickets provide access to "services" as contemplated by the CLRA.  Doc. No. 20 at 8–9.  In support, Plaintiffs cite to a purported split among district courts on this point and assert that "[t]he majority of judges to consider this issue have held that it does."  *Id.* at 8.

There is no clear consensus among the district courts on this issue.  The Court notes, however, that this district has consistently rejected such a broad interpretation and found that the sale of SeaWorld tickets is not encompassed by the CLRA.  *See Simon v. Seaworld Parks & Entm't, Inc.*, No. 3:21-cv-1488-LL-MSB, 2022 WL 1594338, at *6–8

(S.D. Cal. May 19, 2022); *Kouball v. SeaWorld Parks & Entm't, Inc.*, No. 20-cv-870-CAB-BGS, 2020 WL 5408918, at *5 (S.D. Cal. Sep. 9, 2020); *Hall v. SeaWorld Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *14–15 (S.D. Cal. Dec. 23, 2015). The Court is strongly persuaded by these cases, which state pointedly: "to hold that the tickets, or more specifically the admission to the parks that the tickets provide, constitute a service requires a strained and unnatural construction of the term." *Hall*, 2015 WL 9659911, at *15.

The line of cases holding otherwise track back to the Northern District of California's case *Anderson v. Seaworld Parks & Entm't, Inc.*, No. 15-cv-02172-JSW, 2016 WL 8929295, at *8–12 (N.D. Cal. Nov. 7, 2016). The *Anderson* court declined to follow *Hall* and instead engaged in a statutory interpretation analysis of the word "service." *Id.* at *10–12.

First, the Court notes that statutory interpretation is only necessary or appropriate where the language is ambiguous—"that is, susceptible to more than one reasonable interpretation"—not when the language has a plain meaning. *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1249 (2018). *Gutierrez* illustrates the approach: the court first asked whether the operative term "representing" in Cal. Civ. Code § 1770(a)(5), (7), (9) was ambiguous. *Id.* at 1249–50. The court consulted ordinary and legal meanings, and—finding ambiguity—looked to statutory context and legislative history, including provisions that expressly address failures to "disclose" and examples treating nondisclosure as deceptive. *Id.* at 1249–53. Here, the relevant language is not susceptible to more than one reasonable interpretation, so resorting to further statutory construction is neither necessary nor appropriate.

The Court does not believe that resolving this issue in this case requires resort to legislative history or the type of gap-filling analysis undertaken in *Anderson*. The CLRA already defines "goods" and "services," and Plaintiffs do not contend those terms are ambiguous. *See* Cal. Civ. Code §§ 1761(a)–(b). As relevant here, "services" means "work, labor, and services for other than a commercial or business use, including services

furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b). That language focuses on work or labor performed for the consumer, not on the sale of a ticket that confers permission to be somewhere. Consistent with that text, the California Supreme Court has cautioned that the CLRA "applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined," and that courts may not expand the statute by recharacterizing non-covered transactions based on "ancillary services." *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 60–65 (2009). Regardless of whether the "entertainment and education services" that SeaWorld, and Sesame Place for that matter, offer are "services," the CLRA does not encompass sales for access or admission to such services. The distinction is important, as the FAC alleges the purchase of admission tickets and does not allege any distinct service within § 1761(b). *See* FAC ¶¶ 114–16, 119–21. Accordingly, the CLRA does not apply, as it is plainly limited to sales or leases of goods or services.

Likewise, courts construing the "goods" definition have held that an instrument conferring access or privileges is not a "tangible chattel" merely because it has a physical or digital form. *See Simon*, 2022 WL 1594338, at *7 ("A ticket to SeaWorld with the ADDD upgrade is not "work or labor, nor is it related to the sale or repair of any tangible chattel."); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1008 (N.D. Cal. 2012) (virtual "credits" not goods or services under CLRA); *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 229–32 (2007) (credit card "has no intrinsic value and exists only as indicia of the credit extended").

Given the foregoing, this district has repeatedly concluded that an amusement-park ticket, i.e., a revocable license granting admission and access to attractions, does not itself fall within § 1761(b)'s "work [or] labor" provided to a consumer. *See Simon*, 2022 WL 1594338, at *6–8 (tickets with add-on dining privilege "merely allow access" and are not services); *Kouball*, 2020 WL 5408918, at *5 (annual passes are not services), aff'd, 2021 WL 4947877 (9th Cir. Oct. 25, 2021); *Hall*, 2015 WL 9659911, at *14–15 (treating admission as a CLRA "service" would be a "strained and unnatural construction"). The

Court finds that reasoning persuasive.  Plaintiffs' own allegations confirm that what was sold was admission to parks via discounted tickets and do not allege that they purchased discrete "work" or "labor" performed for them within the meaning of § 1761(b).  *See* FAC ¶¶ 114–16, 119–21.  To the extent Plaintiffs argue that the parks provide "entertainment and educational services" once inside, *see* Doc. No. 20 at 8–12, that point does not alter the character of the transaction they challenge in the FAC, *see* FAC ¶¶ 114–16, 119–21.  Any shows, exhibits, or performances occur regardless of whether a specific consumer purchases a ticket; the ticket is merely proof of access to those offerings—not as the sale of "work [or] labor" itself.  *Fairbanks*, 46 Cal. 4th at 65 (rejecting attempts to use "ancillary services" to pull otherwise non-covered transactions into the CLRA).

The contrary authorities on which Plaintiffs rely do not compel a different result. *Anderson* read "services" to encompass SeaWorld's "educational and entertainment services," but did so by going beyond the statute's definitional text, which already defines "services" solely as "work [and] labor," and without identifying any ambiguity that would trigger that extra-textual inquiry.  *See* 2016 WL 8929295, at *8–12; *cf.* *Fairbanks*, 46 Cal. 4th at 60–65 ("A liberal construction mandate affects statutory construction only when the statutory language is ambiguous and the intent of the enacting body is in doubt, however; it cannot be invoked when, as here, the meaning of the statutory language is not otherwise uncertain.").  And *Goodrich v. Alterra Mountain Co.*, 2021 WL 2633326, at *10–12 (D. Colo. June 25, 2021), is out of circuit and involved ski passes that the court viewed as tied to the operator's provision of services such as providing groomed trails and ski lifts and gondolas to reach such trails.  Even if persuasive, it does not overcome the consistent line of cases in the Southern District of California rejecting CLRA coverage for theme-park admission.  *See Simon*, 2022 WL 1594338, at *6–8; *Kouball*, 2020 WL 5408918, at *5; *Hall*, 2015 WL 9659911, at *14–15.  Finally, while *Lum*, 2023 WL 2583307, at *10–12, accepted *Anderson*'s approach as to Legoland, this Court is not persuaded to depart from *Hall*, *Kouball*, and *Simon*,

particularly where Plaintiffs' own pleading does not identify any "goods" or "services" as defined within §§ 1761(a)–(b).  *See* FAC ¶¶ 114–16, 119–21.

Accordingly, independent of the pleading defects identified in section III.B, Plaintiffs' CLRA claim fails as a matter of law because the tickets alleged in the FAC are neither "goods" nor "services" under the CLRA.  *See* Cal. Civ. Code §§ 1761(a)–(b); *see also Simon*, 2022 WL 1594338, at *6–8; *Kouball*, 2020 WL 5408918, at *5; *Hall*, 2015 WL 9659911, at *14–15; *Fairbanks*, 46 Cal. 4th at 60–65.

Plaintiffs also bring a UCL claim premised, in part, on alleged violations of the CLRA.  *See* FAC ¶¶ 130–39.  To the extent Plaintiffs' UCL "unlawful" and "unfair" prong theories borrows the CLRA as its predicate, it rises or falls with the CLRA claim and must be dismissed as well.  *See Kouball*, 2020 WL 5408918, at *5 (dismissing derivative UCL claim with prejudice where CLRA did not apply); *Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14CV2345 AJB MDD, 2014 WL 7335741, at *5 (S.D. Cal. Dec. 22, 2014) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.").

**D.    Breach of Contract Claim**

Defendant moves to dismiss Plaintiffs' breach of contract claim on the grounds that (1) the claim "sounds in fraud" and fails Rule 9(b), and (2) even under Rule 8, Plaintiffs "still failed to give Defendant fair notice of the factual basis for their breach of contract […] claim[ ]."  *See* Doc. No. 15 at 20–22.  Plaintiffs respond that the contract alleged here was not merely to sell tickets at a displayed price, rather, they plead a specific bargain: Defendant promised tickets with a "market value equal to the regular price[] displayed" and a "discount equal to the difference between the price paid, and the regular price[] advertised," which Defendant breached by failing to deliver tickets with the represented value or the promised discount.  Doc. No. 20 at 21–23.  Plaintiffs claim that the more recent cases applying California law have held that such allegations plausibly plead a breach of contract claim.  *Id.* at 23.

As a threshold matter, when a contract claim is predicated on the same allegedly misleading advertising as the statutory fraud claims, courts often apply Rule 9(b). *See Moody v. Hot Topic, Inc.*, No. EDCV 23-0447 JGB (SPX), 2023 WL 9511159, at *9–10 (C.D. Cal. Nov. 15, 2023); *Prescott v. Reckitt Benckiser LLC*, 2020 WL 7075624, at *4 (N.D. Cal. Dec. 3, 2020); *Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*, 2013 WL 6572573, at *3 (C.D. Cal. Dec. 13, 2012). The Court follows that approach here.

Evaluated under Rule 9(b), Plaintiff Marks pleads the "who, what, when, where, and how" with sufficient particularity: identifying the who as United Parks & Resorts/SeaWorld, the what as a "Spring Spectacular Sale" advertising SeaWorld San Diego single-day tickets at $89.99 reduced from a listed regular price of $114.99 with limited-time language, the when as April 19, 2024, the whereas the Defendant's website at www.seaworld.com, and the how as the allegation that the listed regular price did not reflect the Defendant's prevailing price and that the purported limited-time discount was part of an ongoing practice. *See* FAC ¶¶ 38–43, 52. By contrast, as currently pled, Plaintiff Galstian alleges a $67.00 "on-sale" Sesame Place ticket purchased July 29, 2023, but does not identify the specific former price tied to her transaction or comparable temporal particulars about the sale representation she relied on. FAC ¶¶ 44–46. Accordingly, the Court concludes that Plaintiff Galstian has not met Rule 9(b)'s particularity requirement.

Looking at the elements, under California law, a breach of contract requires: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The FAC alleges that each purchase formed a contract under which Plaintiffs would pay for the tickets and Defendant, in return, would provide tickets having a market value equal to the advertised regular strike-through price and a discount equal to the difference between that regular price and the price paid. FAC ¶¶ 48–53, 161–64. Plaintiffs further allege that Defendant breached the contract by

failing to provide tickets with a market value equal to the listed regular price and by failing to provide the promised discount, depriving Plaintiffs of the benefit of their bargain. *Id.* ¶¶ 165–67; *see also id.* ¶¶ 41–45. At the pleading stage, courts addressing materially similar "fake-discount" theories under California law have treated disputes about the contract's terms and about valuation as factual issues not resolvable on a motion to dismiss. *See*, *e.g.*, *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 731 (N.D. Cal. Jan. 5, 2024) (contract and express warranty claims survived where plaintiff alleged agreement to provide products with "market values equal to the non-discounted list prices while providing a discount"); *Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL, 2024 WL 2830663, at *5–7 (N.D. Cal. Mar. 28, 2024) (similar; notice issue also fact-bound); *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1113–14 (N.D. Cal. 2020) (allegations that contract terms included value equal to reference price sufficient); *Munning v. Gap, Inc.*, No. 16-CV-03804-TEH, 2016 WL 6393550, at *7 (N.D. Cal. Oct. 28, 2016) (rejecting "benefit-of-the-bargain" theory at pleadings in light of Hinojos).

Defendant's reliance on *Kim v. Carter's Inc.*, 598 F.3d 362 (7th Cir. 2010) and *Brazil v. Dell Inc.*, 2010 WL 5258060, at *2 (N.D. Cal. Dec. 21, 2010*)* is noted but not dispositive at this stage. Doc. No. 15 at 21–22. Those cases found no breach because the only reasonable reading of the everyday sales contract was a sale at the advertised price. *See*, *e.g.*, *Kim*, 598 F.3d at 364–66; *Brazil*, 2010 WL 5258060, at *2–3. Here, by contrast, Plaintiff Marks plausibly alleges that the strike-through "regular" price and the advertised discount were terms of the bargain, i.e. that Defendant promised tickets with a market value equal to the listed regular price and the discount equals the regular price minus the price paid. FAC ¶¶ 48–53, 161–65. Whether the site representations reasonably created such contract terms, and whether the listed regular prices reflected prevailing market value, are factual questions not suited to resolution on the pleadings. *See Phillips*, 2024 WL 2830663, at *5–6; *Vizcarra*, 710 F. Supp. 3d at 731. Nor does the "benefit-of-the-bargain" argument defeat the claim now. If price-reduction

representations are material to reasonable consumers, Plaintiff Marks' alleged loss of the bargain they were promised states damages sufficiently. *See Munning*, 2016 WL 6393550, at *21–23; *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013); *Freeman*, 443 F. Supp. 3d at 1113–14.

Accordingly, Defendant's motion is DENIED as to Plaintiff Marks's breach of contract claim. The motion is GRANTED as to Plaintiff Galstian's breach of contract claim for failure to satisfy Rule 9(b).

**E.    Breach of Express Warranty Claim**

Defendant moves to dismiss Plaintiffs' express warranty claim on the grounds that it sounds in fraud and must meet Rule 9(b), that Plaintiffs fail to identify any actionable "affirmation of fact or promise," and that alleged statements about "value" are nonactionable opinions. *See* Doc. No. 15 at 23–24. Plaintiffs respond that Defendant's use of strikethrough "regular" prices paired with advertised "limited-time" discounts constitutes an express warranty that the tickets' prevailing market value equals the stated regular price and that consumers would receive the promised discount. *See* Doc. No. 20 at 23–25. Plaintiffs further allege exposure to, and reliance on, those representations. *See id.*

Under California law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty," as does "[a]ny description of the goods which is made part of the basis of the bargain." Cal. Com. Code § 2313(1)(a)–(b). Advertising can create such a warranty so long as the plaintiff was actually exposed to the advertising. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012). However, individualized reliance on any single advertisement is not required. *Id.* The representation, however, must be sufficiently specific and measurable. *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 935–39 (N.D. Cal. 2018). Generalized puffery or vague commendations do not create a warranty. *Id.* Courts have held that a listed "regular" or "former" price and an accompanying advertised "discount" are sufficient at

the motion to dismiss stage to plead actionable affirmations of fact and descriptions of the goods. *See Vizcarra*, 710 F. Supp. 3d at 731 ("[A]s required by the statute, Ms. Vizcarra has alleged a description of the goods [not only their price but also the promised discount] and claims that the description was part of the basis of the bargain."); *Phillips*, 2024 WL 2830663, at *6–7 (finding allegations that defendant failed to deliver goods of the represented value and failed to provide the promised discount sufficient to state a claim); *Nabiyev v. Closet World Inc.*, 2023 WL 7927739, at *7–8 (C.D. Cal. Nov. 16, 2023) ("Plaintiffs allege they were exposed to Defendants' advertisements as well as the representations and express warranties therein. This is sufficient at this stage to establish Defendants' advertisements formed part of the 'basis of the bargain.'"); *Munning*, 2016 WL 6393550, at *8 ("Plaintiff's complaint specifically identifies that the express warranty was the description provided by the Defendants that the products were being sold at a discounted price. ").

The Court agrees that Rule 9(b) applies because Plaintiffs' breach of express warranty theory is based on the allegations that Defendant made false or misleading statements about the market value of tickets to Defendant's parks and the discounts provided. *See* Doc. No. 15 at 20; *see also Moody*, 2023 WL 9511159, at *9. Measured against that standard, as for Plaintiff Marks, Plaintiffs pleads the "who, what, when, where, and how" with adequate particularity in regard to his breach of express warranty theory. Plaintiffs alleges that on April 19, 2024, Plaintiff Marks purchased two tickets in reliance of Defendant advertisement of a "Spring Spectacular Sale" on SeaWorld San Diego single-day, date-specific tickets, listing a regular price of $114.99 and a sale price of $89.99, and representing the sale as time-limited through April 21. FAC ¶¶ 38–42. Plaintiffs further allege that the strikethrough regular price communicated the tickets' prevailing market value and that the discount equaled the difference between the regular and sale prices. *Id.* ¶¶ 41–42. Plaintiffs allege this was part of the basis of the bargain and was false because Defendant did not "regularly sell" the tickets purchased by Plaintiff Marks at $114.99. *Id.* ¶¶ 43, 54, 171–73. These allegations identify a concrete,

measurable representation tied to a specific transaction and, at this stage, sufficiently pleads an actionable affirmation of fact or description rather than nonactionable opinion. *See Phillips*, 2024 WL 2830663, at *6–7 (regular price/discount as basis of bargain); *Vizcarra*, 710 F. Supp. 3d at 731 (same); *In Re Nexus 6P Products Liability Litigation*, 293 F. Supp. 3d at 935–39 (actionable, specific statement versus puffery); *Munning*, 2016 WL 6393550, at *8 (advertised discounted price can constitute express warranty). Accepting the allegations as true, Plaintiff Marks plausibly alleges breach of an express warranty and resulting harm. FAC ¶¶ 171–73. Accordingly, the motion is DENIED as to Plaintiff Marks' express warranty claim.

By contrast, Plaintiffs' allegations as to Plaintiff Galstian, as presently pled, fall short of Rule 9(b)'s particularity requirement. Plaintiff Galstian alleges that on July 29, 2023, Defendant advertised Sesame Place single-day tickets discounted price for $67.00 and that tickets are "always available at a discounted price," but she does not identify any corresponding "regular" or strikethrough price for her purchase,[4] any time-limited representation, or other specific expression of prevailing market value tied to her transaction. FAC ¶¶ 44–46. Without facts specifying the warranty's terms to which she was actually exposed, e.g. the asserted regular price for her tickets and the promised discount, the Court cannot determine the "what" of the alleged express warranty with the precision Rule 9(b) demands. *See Rosales*, 882 F. Supp. 2d at 1178 ("Defendant is correct that a breach of express warranty claim must describe the exact terms of the warranty at issue.") (citing *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128,

---

[4] For clarification, Plaintiff Galstian alleges that she saw a strikethrough regular price when purchasing tickets, but she does not identify what that price was. Doc. No. 11 at ¶¶ 44–46. Plaintiff Galstian concedes that she lacks documentation and instead relies on the boilerplate claim that Defendant's site "always" shows a strikethrough price. *Id.* at ¶ 45 n.9. Plaintiff Marks made the same concession, *Id.* at ¶¶ 42 n.7, yet still alleged the actual strikethrough price tied to his purchase, *Id.* at ¶¶ 41–43. Plaintiff Galstian's omission leaves the "what" of the alleged misrepresentation unspecified, falling short of Rule 9(b)'s particularity requirement.

1142 (N.D. Cal. 2010)).  Accordingly, Defendant's motion is GRANTED as to Plaintiff

Galstian's express warranty claim.

### F.    Rule 9(b) as to Negligent Misrepresentation and Intentional Misrepresentation

Defendant moves to dismiss Plaintiffs' negligent and intentional misrepresentation claims on the ground that they are not pled with the particularity required by Rule 9(b).  Doc. No. 15 at 24–25.  Because misrepresentation claims "sound in fraud," Rule 9(b) applies.  *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1134 (S.D. Cal. 2014).  To the extent Plaintiffs proceed on an omissions theory, Rule 9(b) requires them to specify the omitted information, where it should have been disclosed, and the specific statements they relied on that failed to include the information.  *See Seldin v. HSN, Inc.*, 2018 WL 3570308, at *5–6 (S.D. Cal. July 25, 2018) ("[A] plaintiff must still plead a fraudulent omission claim with sufficient particularity 'so that a defendant can prepare an adequate answer from the allegations.'"); *Hall*, 2015 WL 9659911, at *14 ("These omissions 'must be pleaded with particularity under Rule 9(b).'").  At the same time, omissions are actionable where they are "contrary to a representation actually made" (a "partial representation") or where there is a duty to disclose.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012–14 (N.D. Cal. 2020).

Plaintiffs allege Defendant represented on its websites that park tickets had a "regular" strike-through price reflecting the prevailing market value and were being sold at a discounted "sale" price, and that Plaintiffs relied on those representations when purchasing.  FAC ¶¶ 16–21, 38–40, 54.  Plaintiff Marks alleges that on April 19, 2024 he purchased two SeaWorld San Diego date-specific tickets, advertised at $89.99 with a $50 discount from the displayed regular price; and Plaintiff Galstian alleges that on July 29, 2023 she purchased five Sesame Place San Diego date-specific tickets advertised at $67.00 with a strike-through "regular" price.  *Id.* ¶¶ 41, 44, 52.  Each alleges that he or she would not have purchased had they known the tickets were not discounted off a true

regular or market price.  *Id.* ¶¶ 42, 45.  The misrepresentation claims incorporate these factual allegations and assert that Defendant made false representations and material omissions about the nature of the discounts and the tickets' prevailing market value, that Plaintiffs relied, and that they suffered harm.  *Id.* ¶¶ 186–89, 196–99.

Measured against Rule 9(b), the affirmative misrepresentation theory is sufficiently particularized as to the website strike-through pricing that each named Plaintiff encountered.  The FAC identifies the who, what, when, where, and how with sufficient particularity.  *See* FAC ¶¶ 16–21, 38–41, 44, 52–54.  The "who" is Defendant, via its ticket webpages.  *Id.* ¶¶ 16–21, 53–54.  The "what" are representations that the strikethrough "regular" price reflected the prevailing market value and that the difference was a discount.  *Id.* ¶¶ 16–21, 52, 54.  The "when" are the specific purchase dates alleged for each Plaintiff, July 29, 2023 and April 19, 2024.  *Id.* ¶¶ 38–41, 44.  The "where" are the identified ticket webpages, illustrated by screenshots.  *Id.* ¶¶ 16–21, 54.  The "how" alleges the prices and discounts did not reflect a prevailing market price and the tickets were perpetually "on sale."  *Id.* ¶¶ 16–21, 52–54.

Courts have held similar allegations sufficient where the complaint links the promotional-pricing representations to specific webpages and purchase dates.  *See Phillips*, 2024 WL 2830663, at *4, *7–8 (denying Rule 9(b) motion where plaintiff identified website strike-through prices, his purchase, and reliance); *Vizcarra*, 710 F. Supp. 3d at 731 (disputes over the terms/valuation go to fact, not pleading).  This case is unlike those in which the plaintiff failed to allege exposure to, timing of, or reliance on any specific representation before purchase.  *See Simon*, 2022 WL 1594338, at *8; *Seldin*, 2018 WL 3570308, at *5; *Hall*, 2015 WL 9659911, at *5–6.

On this record, as to Plaintiff Marks, the affirmative misrepresentation theory satisfies Rule 9(b) because the FAC ties the challenged pricing statements to identified ticket webpages and a dated purchase and also alleges exposure and reliance.  FAC ¶¶ 16–21, 38–41, 52, 54.  As to Plaintiff Galstian, the allegations are pleaded with less specificity.  The FAC alleges Plaintiff Galstian's July 29, 2023 purchase but does not

quote the precise promotional language or identify a specific strikethrough "regular" price she saw.[5]  FAC ¶ 44; *see also* ¶¶ 16–21, 54.  On this record, Plaintiff Galstian's affirmative misrepresentation theory does not meet Rule 9(b) pleading standard as it is not anchored to the "who, what, when, where, and how" of what she actually saw and relied on before purchase.

The omissions theory tracks the same divide.  For Plaintiff Marks, the FAC identifies the omitted facts, that the displayed "regular" price was not the prevailing market value and the "sale" price was not time-limited; where the information should have appeared, on the same ticket webpages alongside the strikethrough and "sale" prices; and why a duty arose, partial representations.  FAC ¶¶ 4, 16–21, 38–41, 52, 54.  Courts have treated such allegations as sufficient, recognizing that advertising and packaging can form part of an express warranty and omission-based claims may proceed at the pleading stage where the omission contradicts the partial representation.  *See Anderson*, 500 F. Supp. 3d at 1012–14 (partial-representation duty); *Rosales*, 882 F. Supp. 2d at 1178; *see also Phillips*, 2024 WL 2830663, at *7–8 (rejecting Rule 9(b) challenge to similar "fake discount" omissions).

Nevertheless, omission allegations are insufficient if they do not specify what was omitted and where it should have been disclosed, or if they rest on a pure omission absent a duty to disclose.  *See Seldin*, 2018 WL 3570308, at *5–6; *Stewart v. Electrolux Home Prods., Inc.*, 2018 WL 1784273, at *6–7 (E.D. Cal. Apr. 13, 2018); *Hall*, 2015 WL 9659911, at *14.  As for Plaintiff Galstian's omission allegations, they fail for the same pleading gaps as the affirmative misrepresentation theory.  The FAC pleads Plaintiff Galstian's purchase date of July 29, 2023 but does not identify the precise ticket page she viewed that day, quote the language on that page, or allege the specific "regular" price/"sale" presentation she encountered.  FAC ¶¶ 44–46.  While the cited webpages and

---

[5] *See supra* note 3.

screenshots are illustrative, *see id.* ¶¶ 16–21, 54, they are not tied to Plaintiff Galstian's transaction or exposure.

Accordingly, Defendant's motion is GRANTED with respect to Plaintiff Galstian's negligent and intentional misrepresentation claims. However, Defendant's motion is DENIED as to Plaintiff Marks' negligent and intentional misrepresentation claims, which satisfies Rule 9(b).

**G.    Negligent Misrepresentation and Economic Loss**

Defendant also separately moves to dismiss the negligent misrepresentation claim as being barred by the economic loss doctrine, arguing that Plaintiffs seek purely economic damages premised on the same facts as their contract and warranty claims. Doc. No. 15 at 26. Plaintiffs maintain that this Court "should follow the majority of district courts and the Ninth Circuit's guidance and hold that the economic loss doctrine does not bar Plaintiffs' negligent misrepresentation claims." Doc. No. 20 at 26. In reply, Defendant emphasizes that Plaintiffs do not contest that the negligent misrepresentation claim is barred by the economic loss rule due to being duplicative of the contract and warranty theories and instead cites a purported "majority view" that the rule does not apply, an issue on which Defendant claims there is split authority. Doc. No. 21 at 12–13.

In *Robinson Helicopter Co. v. Dana Corp.*, the court held that the economic loss rule does not bar intentional fraud claims independent of the contract, but described its holding as "narrow in scope." 34 Cal. 4th 979, 991–93 (2004). California courts and Ninth Circuit decisions recognize a split on whether that bar extends to negligent misrepresentation. *Compare Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) (negligent misrepresentation is a "species of fraud" for which economic loss is recoverable), *and Ashton v. J.M. Smucker Co.*, No. EDCV20992JGBSHKX, 2020 WL 8575140, at *12–13 (C.D. Cal. Dec. 16, 2020) (declining to apply the bar in a labeling case), *with Freund v. HP, Inc.*, No. 22-CV-03794-BLF, 2023 WL 187506, at *4, *7 (N.D. Cal. Jan. 13, 2023) (dismissing where negligent-misrepresentation allegations closely paralleled warranty theories) and *In re*

*Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at \*23–24 (N.D. Cal. Oct. 4, 2019).

Recent decisions reflect both approaches. *See Phillips*, 2024 WL 2830663, at \*7–8 (following *Kalitta* and the "majority view" in consumer-advertising cases); *but see Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1036 (N.D. Cal. 2016) (finding that the economic loss doctrine bars plaintiffs' claim for negligent misrepresentation). The California Supreme Court and Ninth Circuit have not squarely resolved this question for negligent misrepresentation, where courts therefore either (1) treat negligent misrepresentation like fraud and allow purely economic loss, or (2) ask whether the tort allegations "closely parallel" the contract or warranty claims such that the tort is "a breach of contract claim in disguise." *See Big Heart*, 2019 WL 8266869, at \*23 ("[A]s currently alleged, the Court construes Johnson's negligent misrepresentation claim to be a claim for breach of express warranty in disguise. For that reason, the Court grants Defendant's motion to dismiss[.]"); *see also Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923–24 (2022) (economic-loss rule bars tort claims not independent of the parties' contracts).

Measured against these standards, the FAC alleges pre-sale pricing representations, regular or strikethrough prices and limited-time discounts, that were allegedly false or misleading because the tickets were "perpetually on sale," and Plaintiff Marks[6] relied on those representations in purchasing and suffered monetary loss. FAC ¶¶ 4, 16–22, 38–41, 43–44, 46, 186–91. Those allegations frame a fraudulent inducement theory grounded in marketing statements made before any contract was formed, not a failure to honor a bargained-for term or warranty after the sale.

Courts frequently decline to apply the economic loss rule in materially similar consumer advertising contexts where the alleged deceit induced the transaction itself.

---

[6] Because the Court dismisses Plaintiff Galstian's negligent and intentional misrepresentation claims under Rule 9(b), it does not reach Defendant's economic-loss arguments as to her claims.

*See Phillips*, 2024 WL 2830663, at *7–8 (fake regular price strike-throughs); *DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 967 (N.D. Cal. 2023) (relying on *Kalitta*); *Ashton*, 2020 WL 8575140, at *12–13 (servings-count misstatements on label); *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *9–10 (N.D. Cal. Sept. 1, 2017) (origin representations on packaging).  California law recognizes an independent tort duty not to make material misstatements that induce reliance, so allowing recovery of economic loss for such deceit does not conflate contract and tort.  *See Robinson Helicopter*, 34 Cal. 4th at 991–93 ("We hold the economic loss rule does not bar Robinson's fraud and intentional misrepresentation claims because they were independent of Dana's breach of contract."); *see also Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407–08 (1992) (finding that negligent misrepresentation is a "separate and distinct tort, a species of the tort of deceit"); Cal. Civ. Code § 1710(2) ("A deceit […] is […] [t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.").

Defendant's authorities are distinguishable.  *See* Doc. No. 15 at 26.  *Big Heart* and *Freund* applied the bar where the negligent misrepresentation claim "closely paralleled" warranty/contract theories concerning the product's performance or the same post-sale obligations, and sought identical economic damages.  *See In Re Big Heart Pet Brands Litigation*, 2019 WL 8266869, at *23–24 ("Here, Johnson's negligent misrepresentation claims and breach of warranty claims rely on allegations that are substantially similar to one another. Therefore, as currently alleged, the Court construes Johnson's negligent misrepresentation claim to be a claim for breach of express warranty in disguise."); *Freund*, 2023 WL 187506, at *4, *7 (dismissing negligent misrepresentation claim under economic loss rule where it duplicated warranty/contract theories, in a case where plaintiffs alleged "all-in-one" printers failed to scan/fax when low on ink and nondisclosure matched the warranty allegations).

Here, by contrast, Plaintiff Marks' negligent misrepresentation count targets alleged front-end pricing statements and discount representations in the advertisements.

*See* FAC ¶¶ 4, 16–21, 38–40, 43, 46, 186–87, 196–97.  Specifically, Plaintiff Marks alleged in the FAC that Defendant's ticket prices were perpetually on sale, with strikethrough regular prices and purported time-limited discounts that did not reflect prevailing market value.  *Id.* ¶ 4.  Plaintiff Marks also details the ticket webpages, including screenshots, showing strikethrough regular prices, lower sale prices, percent-off claims, and limited-time language.  *Id.* ¶¶ 16–21.  Additionally, Plaintiff Marks identifies the locations of the challenged statements and the way the pricing was presented to consumers.  *Id.*  Plaintiff Marks also pleads the negligent misrepresentation claim using the same front-end pricing statements, *i.e.*, the false "regular" price/discount, alleging falsity, justifiable reliance, and resulting economic damages.  *Id.* ¶¶ 186–87, 192.  Further, Plaintiff Marks alleged the intentional misrepresentation count on the same promotional pricing theory, alleging knowledge/intent to induce purchase and Plaintiff Marks' reliance on the webpages, along with the resulting monetary loss.  *Id.* ¶¶ 196–97, 202.  Here, the allegations do not simply mirror contract or warranty obligations, *see In re Big Heart Pet Brands Litig.*, 2019 WL 8266869, at *23–24; *Freund*, 2023 WL 187506, at *7, but instead assert a non-contractual duty sounding in deceit, *see Robinson Helicopter Co.*, 34 Cal. 4th at 991–93; *Bily v. Arthur Young & Co.*, 3 Cal. 4th at 407; Cal. Civ. Code § 1710(2).

Thus, at the pleadings stage, the economic loss doctrine does not bar Plaintiff Marks' negligent misrepresentation claim as alleged.  The FAC frames a pre-contract, advertising-based inducement theory, *i.e.*, false pricing statements that allegedly led plaintiffs to purchase, rather than a mere failure-to-perform or warranty dispute.  *See* FAC ¶¶ 4, 16–21, 38–40, 42–43, 45–46, 186–87, 196–97.  Fraud-type inducement sounding in deceit is actionable despite purely economic loss, and courts decline to apply the doctrine where the tort theory is not a repackaged contract claim.  *See Kalitta Air*, 315 F. App'x at 607; *Phillips*, 2024 WL 2830663, at *7–8; *In re Big Heart Pet Brands Litigation*, 2019 WL 8266869, at *23.  Accordingly, the Court DENIES the motion to

dismiss Plaintiff Marks' negligent misrepresentation claim as barred by the economic loss doctrine.

## IV. CONCLUSION

Based upon the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss. The Court **DISMISSES** Plaintiffs' nationwide class allegations and claims; **DISMISSES** the CLRA claim in its entirety; **DISMISSES** the UCL claim to the extent it is predicated on the CLRA; **DISMISSES** Plaintiff Galstian's breach of contract, express warranty, negligent misrepresentation, and intentional misrepresentation claims for failure to satisfy Rule 9(b). The motion is otherwise **DENIED**.

Should Plaintiffs wish to file an amended complaint, they must do so on or before **October 31, 2025**. Defendant may then respond within the time prescribed by Federal Rule of Civil Procedure 15. Any defendants not named and any claim not realleged in the amended complaint will be considered waived. *See* Civ.L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated:  September 26, 2025

HON. MICHAEL M. ANELLO
United States District Judge