UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAVID MARKS, et al.,

Plaintiffs,

v.

UNITED PARKS & RESORTS, INC.,

Defendant.

Case No.: 3:24-cv-01992-RBM-GC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**[Doc. 29]**

Before the Court is Defendant United Parks & Resorts, Inc.'s ("Defendant") Motion to Dismiss Second Amended Class Action Complaint ("Motion to Dismiss"). (Doc. 29.) Plaintiffs David Marks and Tagui Galstian, individually and on behalf of all others similarly situated ("Plaintiffs"), filed an Opposition to Defendant's Motion to Dismiss ("Opposition"). (Doc. 30.) Defendant filed a Reply Memorandum in Support of Defendant's Motion to Dismiss ("Reply"). (Doc. 31.)

The Court finds this matter suitable for determination without oral argument under Civil Local Rule 7.1(d)(1). Having reviewed the pleadings above, and for the reasons below, the Motion to Dismiss (Doc. 29) is **GRANTED in part** and **DENIED in part**.

# I. BACKGROUND

## A. Procedural History

Defendant removed this action from state court on October 25, 2024. (Doc. 1.) After Defendant moved to dismiss the original Complaint (Doc. 5), Plaintiffs filed a First Amended Complaint on January 21, 2025 (Doc. 11). Defendant again moved to dismiss. (*See* Docs. 15, 20, 21.) On September 26, 2025, Judge Anello issued an Order granting in part and denying in part the motion to dismiss. (Doc. 24.) This action was then transferred from Judge Anello to the undersigned. (Doc. 25.) Plaintiffs filed their Second Amended Complaint ("SAC") on October 31, 2025. (Doc. 26.) Defendant's operative Motion to Dismiss (Doc. 29) was fully briefed on January 26, 2026. (*See* Docs. 30, 31.)

## B. Factual Background[1]

Defendant is a theme park company that sells tickets to theme parks in California including SeaWorld and Sesame Place. (SAC ¶ 1.) Generally speaking, Defendant utilizes fake sales to entice consumers into purchasing tickets. For example, Defendant advertises "Limited-Time" discounts from regular ticket prices, using countdown clocks and language such as "HURRY, OFFER ENDS SOON!" to represent that its sales are on the verge of ending. (*Id.* ¶¶ 4, 16–23.) But these discounts are always available. (*Id.*) Defendant also, until about July 1, 2024, used hidden fees when selling tickets. (*Id.* ¶¶ 5, 62.) These hidden fees constitute "drip pricing"—when a company advertises "only part of a product's total price to lure in customers," and fails to mention "other mandatory charges until late in the buying process"—hiding the true price of tickets until the purchase is nearly complete. (*Id.* ¶¶ 62–85.)

---

[1] This section reflects the allegations in Plaintiffs' Second Amended Complaint ("SAC") (Doc. 26), not conclusions of fact or law by the Court. Well-pled factual allegations are accepted as true for purposes of the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs are two purchasers of tickets sold by Defendant. On April 19, 2024, Plaintiff David Marks ("Mr. Marks") purchased two SeaWorld single-day tickets, three Dine with Orcas tickets, and one parking ticket through Defendant's website. (*Id.* ¶¶ 41, 86.) Mr. Marks and his family used these tickets to "attend[ ] the SeaWorld dolphin and whale shows and interact[ ] with the SeaWorld touch pools, which were also serviced by Defendant's employees." (*Id.* ¶ 28.) On the date of Mr. Marks' purchase, Defendant represented on its website that SeaWorld single-day tickets had a regular price of $114.99 but were on sale for the discounted price of $89.99. (*Id.* ¶ 41.) The tickets were always sold at the purported "discounted" price and therefore, according to Plaintiffs, were never discounted as advertised. (*Id.* ¶ 43.) Moreover, during the checkout process, Defendant represented that the total of Mr. Marks' tickets would be $312.96. (*Id.* ¶ 87.) But at the end of the checkout, Defendant added a "Service Fee" of $22.49, making the actual ticket price $341.65 (including $6.20 in tax), not $312.97, as Defendant had previously represented. (*Id.*)

Similarly, Plaintiff Tagui Galstian ("Ms. Galstian") purchased five Sesame Place single-day tickets through Defendant's website on July 29, 2023. (*Id.* ¶¶ 44, 89.) Ms. Galstian and her family used these tickets to go "to Sesame Place's water park area and r[i]de on the water rides, which were supervised and operated by Defendant's employees." (*Id.* ¶ 28.) On the date of Ms. Galstian's purchase, Defendant represented that single-day tickets to Sesame Place were on sale for a discounted price of $67.99. (*Id.* ¶ 48.) However, these tickets are always available at a "discounted" price. (*Id.* ¶ 50.) Further, during the checkout process, Defendant represented that the total of Ms. Galstian's tickets would be $339.95. (*Id.* ¶ 90.) But at the end of the checkout, Defendant added a "Service Fee" of $16.99, making the actual ticket price $356.94, not $339.95, as Defendant had previously represented. (*Id.*)

Plaintiffs thus assert the following claims against Defendant: (1) violation of California's False Advertising Law, Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"); (2) violation of California's Consumer Legal Remedies Act ("CLRA"); (3–4) violation of

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); (5) breach of contract; (6) breach of express warranty; (7) quasi-contract; (8) negligent misrepresentation; and (9) intentional misrepresentation. (*Id.* ¶¶ 103–209.)

### C. Judge Anello's Previous Order

In its first Motion to Dismiss, Defendant sought to dismiss all nine of Plaintiffs' claims. (*See* Doc. 24 at 4.) Judge Anello dismissed the following claims: Plaintiffs' nationwide class allegations and claims; the CLRA claim in its entirety; the UCL claim to the extent it was based on an alleged violation of the CLRA; and Ms. Galstian's breach of contract, express warranty, negligent misrepresentation, and intentional misrepresentation claims. (Doc. 24 at 29.) The motion to dismiss was denied as to all other claims.

As relevant here, Judge Anello dismissed the CLRA claim because he found that tickets to amusement parks are not "goods" or "services" as required to bring them within the CLRA's ambit. (*Id.* at 16.) Although there "is no clear consensus among the district courts on this issue, . . . this district has consistently rejected such a broad interpretation and found that the sale of SeaWorld tickets is not encompassed by the CLRA." (*Id.* at 12–13. (collecting cases).) Judge Anello, after analyzing relevant precedent on both sides of the district split and discussing statutory interpretation, concluded that (1) amusement park tickets are not "goods" or "services;" and (2) even if Plaintiffs alleged that the amusement parks provided entertainment and educational services once inside, the CLRA would not apply because "[a]ny shows, exhibits, or performances occur regardless of whether a specific consumer purchases a ticket; the ticket is merely proof of access to those offerings—not [ ] the sale of 'work [or] labor' itself." (*Id.* at 15 (quoting *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (2009)).)

## II. <u>LEGAL STANDARD</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under [Rule] 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir.

2011) (internal citation omitted). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. <u>DISCUSSION</u>

Defendant moves to dismiss (1) Plaintiffs' CLRA claim in its entirety; (2) Plaintiffs' UCL claim to the extent it derives from an alleged violation of the CLRA; and (3) Plaintiffs' breach of contract and quasi-contract claims to the extent those claims are brought on behalf of a nationwide class. (Doc. 29 at 2.)

### A. Judicial Notice

The Court may consider documents beyond the pleadings on a motion to dismiss under Rule 12(b)(6) through "judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either: (1) "generally known within the trial court's territorial jurisdiction;" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)–(b).

Defendant requests that the Court take judicial notice of two screenshots of the homepage for the website https://seaworld.com and two screenshots of the homepage for the website https://sesameplace.com. (*See* Docs. 29-2–29-3.) Because Plaintiffs do not oppose the request, and because "[p]ublicly accessible websites . . . are among the proper subjects of judicial notice," *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 895 (N.D. Cal. 2022) (citation omitted), the Court **<u>GRANTS</u>** Defendant's request for judicial notice as to all four screenshots.

Plaintiffs request that the Court take judicial notice of two pieces of legislative history related to an amendment to the CLRA. (*See* Doc. 30-1–30-3.) Defendant opposes Plaintiffs' request, arguing that legislative history need not be considered "[g]iven the Court's finding that the CLRA is not ambiguous." (Doc. 31 at 10 n.4 (citing *People v. Flores*, 44 Cal. App. 5th 985, 997 n.5 (2020) (denying request for judicial notice of legislative history where the language of the statute was plain and unambiguous)).) Because the Court does not find it necessary to analyze legislative history to rule on the Motion to Dismiss (*see infra* Section III.B), the Court **DENIES** Plaintiffs' request for judicial notice.

**B. CLRA Claim**

The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). "Services" are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(b). "Goods" are defined as "tangible chattels." *Id.* § 1761(a). The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760. But it "is not an otherwise applicable general law. . . . Rather than applying to all businesses, or to business transactions in general, [the CLRA] applies only to transactions for the sale or lease of consumer 'goods' or 'services' as those terms are defined in the act." *Fairbanks*, 46 Cal. 4th at 60–61.

The Court finds, consistent with Judge Anello's reasoning and previous Order, that the tickets at issue here are not "goods" or "services." First, Plaintiffs' conclusory allegation that "[t]hese tickets are tangible chattel" does not make them so. (*See* SAC ¶ 28.) As another court in this District already explained, "the ticket here is the physical representation of an agreement for something intangible, access to [SeaWorld or Sesame Place]," and is therefore not a "good" under the CLRA. *Lum v. Merlin Entm'ts Grp. U.S.*

*Holdings Inc.*, Consolidated Case No.: 20cv01049 JAH-MSB, 2023 WL 2583307, at *10 (S.D. Cal. Mar. 20, 2023) (citation modified). This Court finds the same.

Second, although there is a split among the district courts, the Court notes that the majority of courts to have considered the issue have concluded that tickets to amusement parks are not "services" under the CLRA. *See Hall v. Sea World Entm't*, Case No.: 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *14–15 (S.D. Cal. Dec. 23, 2015); *Kouball v. SeaWorld Parks & Entm't, Inc.*, Case No.: 20-cv-870-CAB-BGS, 2020 WL 5408918, at *5 (S.D. Cal. Sept. 9, 2020); *Simon v. SeaWorld Parks & Entm't, Inc.*, Case No.: 3:21-cv-1488-LL-MSB, 2022 WL 1594338, at *6–8 (S.D. Cal. May 19, 2022); *Marks v. United Parks & Resorts, Inc.*, Case No. 24-cv-1992-MMA-KSC, 2025 WL 2767941, at *6–8 (S.D. Cal. Sept. 26, 2025). These courts have reasoned that "to hold that the tickets, or more specifically the admission to the parks that the tickets provide, constitute a service requires a strained and unnatural construction of the term." *Hall*, 2015 WL 9659911, at *15 (collecting cases) (citing *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008) (holding that timeshare credits which provide "a vacation license, the right to use, occupy and enjoy . . . properties" do not qualify as services). The Court is persuaded by this "consistent line of cases in the Southern District of California rejecting CLRA coverage for theme-park admission." *Marks*, 2025 WL 2767941, at *8.

The Court is also persuaded by language from the California Supreme Court's decision in *Fairbanks*. There, the California Supreme Court held that life insurance policies are not "services" as defined by the CLRA. 46 Cal. 4th at 65. It also rejected the plaintiffs' alternative argument that "the work or labor of life insurance agents and other insurance company employees in helping consumers select policies that met their needs . . . are services that are sufficient to bring life insurance within the reach" of the CLRA:

> [A]ncillary services are provided by the sellers of virtually all intangible goods—investment securities, bank deposits accounts and loans, and so forth. The sellers of virtually all these intangible items assist prospective customers in selecting products that suit their needs, and they often provide additional

> customer services related to the maintenance, value, use, redemption, resale, or repayment of the intangible item. Using the existence of these ancillary services to bring intangible goods within the coverage of the [CLRA] would defeat the apparent legislative intent . . . . We conclude, accordingly, that the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the [CLRA].

*Id.*

Here, as discussed above, access to an amusement park is an intangible good. Plaintiffs argue that Defendant's employees' provision of services in support of that intangible good—for example, supervising the SeaWorld touch pools or operating the Sesame Place water rides (*see* SAC ¶ 28)—is enough to bring their claim within the CLRA. But the language above from *Fairbanks* appears to foreclose this argument; finding that ancillary services provided relative to an intangible good are enough to state a CLRA claim would be contrary to the legislature's intent to have the CLRA apply only to "goods" or "services." *Fairbanks*, 46 Cal.4th at 65 ("The Consumer Legal Remedies Act is not an otherwise applicable general law.").

Furthermore, although Plaintiffs argue that the legislative history of the drip pricing amendment to the CLRA demonstrates an intent to extend the CLRA to amusement park ticketing, the Court need not reach legislative history because the text of the CLRA is unambiguous. *See Lopez v. Sony Elecs., Inc.*, 5 Cal. 5th 627, 634 (2018) ("If the statutory language is clear and unambiguous our inquiry ends . . . and resort to extrinsic sources to determine the Legislature's intent is unnecessary.") (citation modified). Indeed, in *Fairbanks*, the California Supreme Court described the CLRA's "statutory language [a]s unambiguous" such that "there is no need to consider legislative history," and it considered the legislative history "only from an abundance of caution." 46 Cal. 4th at 61. "When statutory language is . . . unambiguous . . . courts should not indulge" in statutory construction, and the Court will not here. *See Delaney v. Superior Court*, 50 Cal. 3d 785, 800 (1990) (citation modified).

Finally, the Court briefly addresses the Parties' disagreement regarding the scope of Judge Anello's previous Order. (*See* Doc 29-1 at 8–9 (arguing that the CLRA claim was

dismissed with prejudice); Doc. 30 at 5–6 (arguing that the CLRA claim was dismissed with leave to amend).) In the previous Order, Judge Anello concluded that "[t]o the extent Plaintiffs argue that the parks provide 'entertainment and educational services' once inside, . . . that point *does not alter the character of the transaction they challenge in the FAC*." (Doc. 24 at 15 (emphasis added).) Therefore, although the previous Order did not explicitly forbid Plaintiffs from realleging their CLRA claim, it does raise law of the case concerns.

"The law of the case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Zeyen v. Bonneville Joint Dist., #93*, 114 F.4th 1129, 1136–37 (9th Cir. 2024) (citation modified). The doctrine "serves additional purposes when a new district judge is assigned to the case and is asked to reconsider the former judge's decision." *Id.* As relevant here, a second district judge should not reconsider "an interlocutory order by a prior judge in the same case" unless the first decision was "clearly erroneous and its enforcement would work a manifest injustice." *Id.* These descriptors do not apply to Judge Anello's previous Order. To the contrary, the Court agrees with its reasoning and, as discussed above in this section, independently reaches the same conclusion.

For the reasons above, the Court **GRANTS** the Motion to Dismiss as to the CLRA claim. Because a ticket for entrance to an amusement park does not constitute a "good" or "service" under the CLRA, Plaintiffs' CLRA claim is **DISMISSED with prejudice**. Additionally, to the extent that Plaintiffs' UCL claim is predicated on an alleged violation of the CLRA, the UCL claim is also **DISMISSED with prejudice**. *See Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14cv2345 AJB (MDD), 2014 WL 7335741, at *5 (S.D. Cal. Dec. 22, 2014) ("Where a plaintiff cannot state a claim under the 'borrowed' law, she cannot state a UCL claim either.") (citation modified).

### C. Nationwide Class Claims

One of the five classes Plaintiffs seek to represent is a nationwide class consisting of "all persons who, within the applicable statute of limitations period, purchased one or more ticket advertised at a discount on the SeaWorld or Sesame Place [sic]." (*See* SAC

¶ 96.) Judge Anello previously dismissed this class, explaining that Plaintiffs do not "have standing to hypothetically assert claims on behalf of unnamed class members under potentially forty-nine (49) other states' laws that do not govern their own claims." (Doc. 24 at 6–9.) Defendant argues that "[n]othing has changed," and the Court should again dismiss the nationwide class. (Doc. 29-1 at 20–22.) Plaintiffs argue that their nationwide class claims should proceed because (1) Plaintiffs now seek to bring claims only under California law and (2) class standing is more appropriately resolved on a motion for class certification. (Doc. 30 at 12–15.)

The Parties agree that (1) Plaintiffs have standing to allege claims only under California law and (2) the classes of California consumers who purchased admission tickets to California theme parks should proceed, at least past a motion to dismiss. (*See* Doc. 30 at 12–14; Doc. 31 at 10–13.) The dispute here, then, is whether the remaining class members have sufficiently significant contacts with California such that Plaintiffs can constitutionally allege California law claims on their behalf. *See Conde v. Sensa*, Case No.: 14-CV-51 JLS (WVG), 2019 WL 4277414, at *5 (S.D. Cal. Sept. 10, 2019) ("[T]he class action proponent bears the initial burden of showing that California has a sufficient aggregation of contacts to the claims of the putative class.") (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590 (2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)). "Such a showing is necessary to ensure that application of California law is constitutional." *Mazza*, 666 F.3d at 589.

As currently pled, the SAC does not make this required showing. As Defendant correctly notes, the SAC fails to allege that California has any connection to purported class members who reside outside of California and who purchased tickets to one of Defendant's theme parks outside of California. (*See* Doc. 29-1 at 18–19.) Plaintiffs themselves concede that for these purported class members, "discovery is necessary to determine whether there are significant contacts to California," as discovery "will reveal whether Defendant's representations emanated in part from California—for example, if

Defendant's marketing executives . . . reside[ ] in California, [or] if Defendant worked with a California-based company to make its misleading advertising." (Doc. 30 at 13.)

However, the Court finds that maintenance of the nationwide class is an issue more appropriately resolved on a motion for class certification. When Judge Anello previously dismissed the nationwide class, he did so because "Plaintiffs ha[d] not even identified which state laws govern their [ ] nationwide class claims." (Doc. 24 at 7–9 ("In sum, the question here is whether Plaintiffs have standing to hypothetically assert claims on behalf of unnamed class members *under potentially forty-nine (49) other states' laws* that do not govern their own claims.") (emphasis added).) That is no longer the question; rather, as discussed above, the question is whether Plaintiffs will be able to allege sufficient contacts between the purported nationwide class members and California. The Ninth Circuit has found that a district court abuses its discretion under similar circumstances when it denies nationwide discovery, finding that plaintiffs "must be given 'an opportunity to present evidence as to whether a class action [is] maintainable,' and such an opportunity requires 'enough discovery to obtain the material.'" *Edwards v. The First Am. Corp.*, 385 Fed. App'x 629, 631 (9th Cir. 2010) (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[T]he necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant.")). Therefore, the Court **DENIES** the Motion to Dismiss as to Plaintiffs' nationwide class claims. *Accord Timmins v. Walmart, Inc.*, 790 F. Supp. 3d 931, 940 (E.D. Cal. 2025) (declining "to limit the putative class to claims under California law on behalf of other California consumers (i.e. exclude consumers outside California)" because "[t]his determination is proper upon a motion for class certification, not a motion to dismiss").

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. 29) is **GRANTED in part** and **DENIED in part**. Accordingly:

1. Defendant's request for judicial notice is **GRANTED**. Plaintiffs' request for judicial notice is **DENIED**.
2. Plaintiffs' CLRA claim is **DISMISSED with prejudice**. To the extent Plaintiffs' UCL claim is predicated on an alleged violation of the CLRA, the UCL claim is also **DISMISSED with prejudice**.
3. The Motion to Dismiss is **DENIED** to the extent it seeks to dismiss Plaintiffs' nationwide class claims.
4. Defendant **SHALL ANSWER** the SAC on or before **September 17, 2026**.

**IT IS SO ORDERED.**

DATE: August 26, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE